## JOSEPH PIGG v. THE STATE.

1. OPINION OF WITNESS AS TO INSANITY.—The opinion of the family physician who has observed symptoms of insanity in defendant is admissible on the question of his sanity at the time of the commission of an offense.

2. WANT OF CONSENT OF OWNER—THEFT.——It is not *consent* to the taking for the owner to obtain the aid of a detective, who for the purpose of detection joins the defendant in a criminal act designed by the defendant and carried into execution by actual theft.

3. VARIANCE.—Where on a trial for theft of a *gelding*, the statement of facts shows that the word *horse* is used in describing the animal stolen, and no question was made below, *quere*, whether the court on appeal would reverse for variance in proof.

APPEAL from Criminal District Court of McKinney city, in Collin county. Tried below before Hon. Silas Hare.

Joseph Pigg and Thomas Smith were indicted jointly for theft of a gelding, the property of John Christian. Pigg was put upon trial, and John P. Snyder, witness for the State, testified that he was present on Tuesday night, 22d of September, 1874, in Collin county, when defendant and Smith took Christian's horse, and defendant took S. F. Cooke's horse. They were both present when the horses were taken, and acting together.

On cross-examination Snyder testified that Christian and others suspected that defendant and Smith were engaged in stealing horses, and requested witness to get into their confidence and learn whether they were or not, which witness did, and they (Pigg and Smith) told witness they had Christian's horse picked out, and witness agreed with them to engage in stealing the horses.

Witness (Snyder) so conducted the affair that he was present when defendant and Smith took the horses and led them out of the stable, when the party was arrested. Christian testified that he had given no consent that his horse should be taken, but corroborated Snyder in the arrangement by which the defendant was detected.

The plea of insanity was insisted on, and one Dr. J. B. Tarpley, being called for defendant, stated that he had been the family physician of W. J. Pigg, father of defendant, about two years, and had practiced medicine about thirty-eight years; that about two years before the trial he was called upon to see defendant, who was sick; that in making a diagnosis of the disease witness found he could not satisfactorily make such diagnosis from the mental condition of defendant and the disease with which he seemed afflicted; that his mind at the time was in an abnormal condition not occasioned by the disease, and that his diagnosis of the disease was made without reference to the cause of this mental condition. Witness said he had on several occasions noticed the actions of the defendant. Once he came to Sunday school, and seemed wild; witness asked him what he wanted; defendant said "his father had sent him there to get his reaper;" defendant "spoke somewhat confusedly, and if I had not known what he wanted I probably could not have learned from him. I told him where it was, and he went and got it and carried it home. I also noticed him once at a funeral; he acted singularly in riding in and out and crossing the procession." Upon this counsel for defendant asked the witness "whether he was of opinion that defendant was of sound or unsound mind?" to which the district attorney objected, and the opinion of the witness was excluded.

The father of defendant testified that insanity had occurred in the ancestors of the mother of defendant, and that defendant had received several injuries on the head, and was not at himself at times.

The court instructed the jury, after giving the statutory definitions pertaining to the offense.

"6. That the State must show that the gelding was taken without the consent of the owner; and upon this point I instruct you that if Christian, the alleged owner, by himself or by some one acting for him, by words or acts,

suggested or induced defendant, or those with him, when he may have acted in an original intent or design to steal the gelding, and having induced such original intent, he, or the person acting for him, acted as one of the party throughout, that is, in the original intent to steal, and in the acts resulting in theft, then in such case the want of consent would not be established, and the defendant should be acquitted. If, however, on the other hand it shall appear that the intent to steal the gelding originated with the defendant, or those with whom he acted, and that Christian, or no one acting with him, induced or suggested such original intent, but only used means intended to detect and catch the thief, without affording him an opportunity to consummate his purposes, or to provide for its discovery after such intent was formed by the defendant or those with whom he may have acted, and such intent so formed was not suggested or induced by Christian, or any one for him, and his consent was not actually obtained, then in such case the crime would be complete, so far as want of consent is concerned."

This charge was excepted to, and other instructions were asked by the defendant, which sufficiently appear in the opinion.

Defendant was convicted, and his punishment fixed at five years in the penitentiary.

*Throckmorton, Brown & Bro.*, for appellant.

*A. J. Peeler, Assistant Attorney General*, for the State.

DEVINE, ASSOCIATE JUSTICE.—The defendant was jointly indicted with one Smith, charged with having stolen a gelding, worth seventy-five dollars, from John Christian, the owner of the animal, and without the consent of the owner. The defendant, Pigg, was alone tried and convicted of the offense charged.

The first assignment of error, that the court erred in

excluding testimony, (referring to the bill of exceptions,) is sustained by an examination of the grounds of exception, which in substance are that "Dr. Tarpley, being examined as a witness, stated that he had been a practicing physician about thirty-eight years; that he been the family physician of defendant's father about two years, and was called in by defendant's father to see the defendant, who was ill; that his mind was affected, and that the disordered condition of his mind was not caused by his then sickness." This witness mentioned other facts noticed by him at different times relative to the strange conduct of the accused. Upon which defendant's counsel asked the witness "whether he was of the opinion that defendant was of sound or unsound mind." The State's counsel objected, and the court sustained the objection. In this the court erred. The previous questions to this witness, and his answers, authorized the putting to him the question objected to.

It was shown that he was and had been a practicing physician for many years; had been the family physician for two years; had attended defendant when his mind was in a disordered condition; in fact that he was a witness whose opinion was worth in this case more than most witnesses could possibly be, by reason of his long experience and peculiar facilities for observation and knowledge of the defendant.

In cases of this character, the opinions of medical men on the facts stated by them "are constantly admitted as to the cause of disease or death, or the consequences of wounds, and as to the sane or insane state of a person's mind." (1 Greenl. on Ev., § 440, and 2 Greenl. on Ev., § 371; 12 Ala. Rep., 828; Beavan v. McDonnell, 26 Eng. Law and Eq. Rep., 541; Shelton v. The State, 34 Tex., 666.)

The accused was entitled to the benefit (if any) arising from the answer of the witness to the question propounded.

The refusal of the court to permit the witness to answer the question deprived the accused of a clear legal right. How far his defense may have been prejudiced by it, we cannot say. It is sufficient to know that it was his right to have the question answered by the witness, and that it was relied on as material to his defense.

The exceptions to the charges given, and the refusal of the court to give the instructions asked for defendant, are not sustained by an examination of those charges. Those given were substantially correct, and those asked by the defendant, and not embraced in the general charge, were framed in language more favorable to the accused than the statement of facts would justify.

As the judgment must be set aside for. the error in excluding the answer of the witness Tarpley, and the cause remanded, it is not considered necessary to refer to the fullness or insufficiency of the evidence in this case. The question is presented in this court, which was not made in the court below, that defendant was charged with the theft of "a gelding," while in the statement of facts the term "horse" is alone used. This, in all probability, was an error committed in making out the statement of facts. Admitting, however, that the word "horse," instead of "gelding," was used by the witnesses on the trial, the following remarks of Chief Justice Roberts, in Mathews v. The State, decided at the late Tyler term, are in point in this case: "It may be said that the witnesses in using the term 'horse,' had no reference to the technical sense in which it is used in the statute, but in the sense in which it is used in ordinary conversation." And that the jury so understood, and had a right to understand, the witnesses to mean by the term horse such an animal as was described in the indictment.

There being no question raised in the court below, during or after the trial, on this alleged variance between the charge and the proof, it is not now necessary to decide

this question, " as it is not likely to be left in doubt on another trial."

Reversed and remanded.