### JAMES CHITISTER v. THE STATE.

*No. 1030.    Decided December 1.*

**1.  Charge—Circumstantial Evidence.**—There is no prescribed form for a charge upon circumstantial evidence.   If the ideas conveyed are correct, and so expressed as to be understood by the jury, the charge is sufficient.   See charge on the subject held sufficient.

**2.  Witness—Accessory, When.**—To render a witness an accessory to the crime, it must appear that he concealed the accused or gave him some aid, so that he may have evaded an arrest or trial, or the execution of his sentence.   Such relationship to the crime is not established by proof that the witness induced defendant to pay him to leave the State, in order to get rid of his testimony.

**3.  Charge—Accomplice Testimony.**—Where a witness against a defendant is shown to have sought and accepted a bribe from him to leave the State, but that he did so for the purpose of securing testimony to convict the defendant, and that he was acting in the prosecution of and testified at the trial against the defendant, *Held*, as to such witness the court was not required to charge the law of accomplice testimony.

**4.  Same—Issue not Raised by Evidence.**—It is not error to fail or refuse to instruct the jury upon an issue not raised by the evidence.

APPEAL from the District Court of Jack.   Tried below before Hon. J. W. PATTERSON.

This appeal is from conviction for theft of one head of cattle, the punishment assessed being two years in the penitentiary.   The conviction was had upon the count in the indictment which charged the theft of an animal, the ownership of which was to the grand jurors unknown.

The principal witness for the State was James Crowley, and he testified substantially as follows:   That he had charge of the Otten pasture, and that about ten months before the alleged theft, in putting

some cattle belonging to another party into the pasture, he had put this unmarked and unbranded yearling in the pasture with them, believing it to belong to the party owning the other cattle; that the animal was an estray; that on the 16th day of October, 1893, he saw defendant and his stepfather, Tom Pursley, drive this stray animal out of the Otten pasture, and that it had never been seen since.

The facts as to his having accepted a bribe not to testify against the defendant are thus stated by the witness: "On Wednesday morning, October 18, 1893, I passed Tom Pursley's, where defendant was living, on my way to Conway's; and while passing defendant's home I saw, hanging in a tree near the west end of the house, a pair of bloody pants. There was blood on the front part of the legs. Defendant had these pants on the 16th of October, when I saw him and Tom Pursley driving the stray yearling. They were ducking pants. I have seen them often. Defendant wore these while picking cotton for me, a short time before this. He picked cotton for me for more than a month. I also saw a flock of buzzards flying around just north of the house, and occasionally one would fly over the house. The country over which the buzzards seemed to hover was a rugged timber country, with large hills and canyons. About noon on the same day I rode up to defendant sitting on his field fence, and had a conversation with him. I told him that the stray yearling was missing; he made no reply. On the following Saturday night I was at defendant's home. He was not there. Rosebud Holder went with me down there. Holder went out north of the house; was gone ten or fifteen minutes, and came back with Tom Pursley. Pretty soon I left for home. Defendant had not come home up to the time that I left. On the next morning, which was Sunday, I went back to defendant's home. There I found defendant and Tom Pursley. I had a conversation with Tom Pursley, and then went up the creek to see my father, and asked my father if there would be anything wrong in me accepting a bribe from Tom Pursley in this case. He said he did not think there would. I then went back to Tom Pursley's, and found defendant and Pursley still there. I had a conversation with Tom Pursley, and defendant was standing close by. Tom Pursley offered me eight head of cattle, a horse, and $25 in money if I would leave the country and go to the Nation, and not tell what I knew about Tom Pursley and defendant driving the stray yearling. I accepted his proposition, and he then called defendant up to where we were standing, and in answer to my question defendant said he understood all about the bribe. Tom Pursley then asked defendant if he would be willing to let the $2.75 which I owed defendant for picking cotton go in on the payment of the $25 which Pursley was to pay me on the bribe, and defendant said he was. The eight head of cattle and the horse were turned over to me at that time. Rosebud Holder was present to witness the turn over."

He further testified: "I did not testify in the case till J. C. Houts, county attorney, wrote me a letter and promised he would not prosecute me for accepting a bribe if I would testify in this case. I was in Jacksboro before I made the complaint, and had a talk with the county attorney about this case. Do not remember all I told him, but I would not make the complaint in this case until he had given me his written promise that I would not be prosecuted for bribery. I wanted to get better evidence against defendant in this case, and thought if he would pay me a bribe it would be evidence enough to convict him. I was afraid that just seeing defendant and Tom Pursley driving the yearling would not be enough to convict them, and that is why I got them to give the bribe. Bill Shields told me if there was any case in it he wanted to know it, and wanted me to work it up. I talked with Rosebud Holder and Bill Shields in regard to accepting the bribe, so as to get sufficient evidence against defendant and Tom Pursley. I did accept the bribe in order to get more evidence against defendant and Tom Pursley."

Rosebud Holder, for the State, said: "I know defendant and Tom Pursley. They live together. I was at Tom Pursley's on the 20th of October, 1893. This was on Friday. Neither defendant nor Tom Pursley were at home. My mission was to see if Tom Pursley and defendant were going to pay Jim Crowley a bribe to leave the country. The next Sunday morning Jim Crowley and I went to defendant's home. There we found defendant and Tom Pursley. About noon on that day Tom Pursley called me out to witness the turning over by him of the property to Jim Crowley. There were eight head of cattle and a horse turned over to Jim Crowley. Defendant was present at this time. Tom Pursley said, in the presence of defendant, this property was turned over to Jim Crowley in satisfaction of a debt he was owing Crowley. I knew it was not. I knew the property was given to Crowley as a bribe. On Wednesday following this I had a conversation with defendant at my house. In that conversation defendant said, 'Has Jim Crowley left the country?' I said, 'I don't think he has;' and defendant said, 'We paid him to leave the country, and by God he has got to leave.' I helped Jim Crowley to work up the bribe, and the reason I did it was to get more evidence against the defendant. I did not get any part of the bribe. I did not want any of it. I was only working for evidence against defendant and Tom Pursley."

The charge of the court was excepted to for insufficiency of the instruction upon circumstantial evidence. The paragraph of the charge upon this subject which is complained of will be found below, quoted in the opinion of the court.

An exception was also reserved to the action of the court in refusing defendant's special requested instruction, to the effect, that if the jury found the witness James Crowley to be an accessory they could not

convict the defendant on his testimony, unless corroborated by other testimony tending to connect defendant with the offense committed.

*W. E. Taylor* and *Jones & Gilliland*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—1. The court charged the jury, that "In this case the State relies for a conviction on circumstantial evidence alone, and in order to warrant a conviction upon such evidence each fact necessary to establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of guilt, and producing in your minds a reasonable and moral certainty that the accused committed the offense."

This instruction, favorably for appellant, presents the law applicable to circumstantial evidence, and is not subject to the criticism that it does not furnish the jury a proper rule for weighing the facts separately and collectively. There is no prescribed form for such instruction. If the ideas conveyed by the charge are correct, and so expressed as to be understood by the jury, then it is sufficient. Willson's Crim. Proc., sec. 2342. for collated authorities.

2. That he induced appellant to give him property to secure his departure from the State in order to be rid of his testimony did not, of itself, constitute the witness Crowley an accessory. In order to render the witness an accessory, he must have concealed the accused or given him some aid so that he may have evaded an arrest or trial, or the execution of his sentence. Penal Code, art. 86. This was not done. The witness did accept the property, and also agreed to leave the State. He, however, did not leave the State, and it is shown that he sought the bribe as a means of securing testimony for the purpose of convicting appellant for the theft of the animal set out in the indictment. He was active in the prosecution of the case, and testified in behalf of the State on the trial. This evidence did not require a charge upon the law applicable to accomplice testimony, and the court did not err in failing to so charge.

3. Nor did the court err in failing to charge the jury that they could not convict appellant for theft of any animal other than that set out in the indictment. No such issue was suggested by any evidence adduced on the trial. There was no proof whatever in regard to other stolen cattle.

The testimony is sufficient, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.