FRANK SMALLEY v. THE STATE.

No. 406. Decided April 19, 1910.

</div>

**1.—Bribery of Witness—Continuance—Subsequent Application—Diligence.**

Where, upon trial for bribery, the application for continuance did not state whether it was the first or second application, the same was addressed to the sound discretion of the court, who having overruled the same and refused a new trial, there was no error; besides there was a total lack of diligence.

**2.—Same—County Court—Case Pending—Information.**

Upon trial for bribery of a witness, where the State based the prosecution on an attempt to bribe a witness in a case pending in the County Court, and introduced in evidence the affidavit in said case pending in the County Court, and other papers relating thereto; this was sufficient to show that a case was pending in said County Court, and it was not necessary to introduce an information based on said affidavit. The affidavit having been filed and a subpoena having been issued thereon, the case was pending.

**3.—Same—Irregularity of Proceeding—Estoppel.**

In a prosecution for bribery of a witness, based upon a case pending in the County Court, the defendant will not be heard to question the regularity of proceedings in the County Court, where he has executed bond for his appearance and knew that the person whom he attempted to bribe was subpoenaed as a witness, and it was immaterial whether an information was filed in the County Court or not. Distinguishing Moore v. State, 44 Texas Crim. Rep., 159; Ex parte Richards, 44 Texas Crim. Rep., 561. Following Florez v. State, 11 Texas Crim. App., 102.

**4.—Same—Charge of Court—Accomplice.**

Where, upon trial of bribery of a witness, the defendant denied in toto the charge, but claimed that the said witness suggested that he bribe him, which defendant refused; and the State's evidence showed that the defendant at different times attempted to bribe said State's witness to absent himself from the court and not testify, there was no error in the court's failure to charge on accomplice testimony. Following Chitister v. State, 33 Texas Crim. Rep., 635.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of bribery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. A. Evans* and *J. H. G. Lee* and *McGrady & McMahon*, for appellant.—Upon question as to when a case is pending: 22 Cyc., 171; Prewitt v. State, 34 S. W. Rep., 924; Gould v. People, 89 Ill., 216; Byrne v. State, 47 Ind., 120; Jackson v. State, 48 Ind., 251; State v. First, 82 Ind., 81; State v. Huddleston, 75 Mo., 667; State v. Sebecca, 76 Mo., 55; State v. Shortell, 93 Mo., 123; article 142, White's Penal Code; Smith v. Adams, 130 U. S., 167; Osborne v. U. S. Bank, 22 U. S., 738; Leal et al. v. State, 51 Texas Crim. Rep., 425; Moore v. State, 44 Texas Crim. Rep., 159; Ex parte Richards, 44 Texas Crim. Rep., 561; article 437, White's C. C. P.; article 35, id.; Deon v. State, 3 Texas Crim. App., 435; Garza v. State, 11 Texas Crim. App., 410; Brown v. State, 55 Texas Crim. Rep., 572.

*John A. Mobley*, Assistant Attorney-General, for the State.

McCORD, JUDGE.—Appellant was indicted and convicted in the court below of the offense of bribery and his penalty assessed at confinement in the penitentiary for two years.

Appellant seeks a reversal complaining that the court below erred in refusing to grant him a continuance. The application for a continuance omits to state whether it is the first, second or third application for a continuance. The judge's explanation to the bill of exceptions, taken to the action of the court in overruling the application for continuance, states: "On the hearing of defendant's motion for new trial the State filed a contest to defendant's application for continuance, containing, among other things, affidavits of T. W. Ragsdale and Dave Watson, showing that the witness Elmer Knight testified contrary to the allegations in defendant's application for continuance, while the witness Elmer Knight was before the grand jury during the investigation of this case, and I here refer the court to all of such contest in the transcript in passing on this bill of exception. This case had been continued before for these two witnesses and no diligence was shown whatever by the defendant to secure the witnesses or their testimony." The case was tried at the August term, 1909,

of the District Court of Fannin County. The application for continuance shows that the last subpoena issued for the witness Knight was issued on the 16th day of February, 1909, which subpoena showed that it never had been served. The application fails to show any diligence whatever to secure the witness Lee Osborn. It simply states that several subpoenas had been issued for the witness Osborn and that appellant had learned for the first time two days ago that the witness lives near the town of South McAlester, Oklahoma, and that he, appellant, has not had time to procure his depositions. We think there is a total lack of diligence to secure the attendance of these witnesses and the application, not showing whether it is the first or second, and being addressed to the discretion of the court and the said application having been reviewed on motion for new trial by the court below, the court did not err in refusing to grant the continuance.

2. Counsel earnestly insist in this court that the case should be reversed because of the fact that the State failed in the court below to prove that there was a case pending in the County Court of Fannin County. In the trial of the case in the court below, which was predicated upon an indictment which charged that appellant, on the 20th day of June, 1907, in the county of Fannin, State of Texas, did then and there unlawfully, wilfully and corruptly offer to pay one Tom Hall the sum of $25 in money to disobey a subpoena which had been issued for said Tom Hall in a certain criminal case No. 6677, upon the docket of and pending in the County Court of Fannin County, wherein the State of Texas was plaintiff and appellant was defendant, which said subpoena had been issued by the clerk of the County Court of Fannin County and had been legally served upon the witness Tom Hall, the State offered in evidence the subpoena issued out of said County Court of Fannin County. This subpoena was issued on the 17th day of April, 1907, for Tom Hall, and directed to the sheriff of said county to summon the said Tom Hall to appear before the Honorable County Court of Fannin County on the first day of July, 1907, in the town of Bonham, to testify in behalf of the State in a certain suit now pending in said court wherein the State of Texas was plaintiff and Frank Smalley, defendant, the number of said suit being 6677. It was further proved that the said sheriff had executed said subpoena by reading it to the witness Hall. The State also proved that there was an affidavit filed in the County Court of Fannin County, No. 6677, charging appellant with violating the local option law and endorsed on said affidavit was the name of Tom Hall as a State's witness. The State also offered a bond executed by the appellant for his appearance to answer a charge of violating the local option law which was filed in the County Court of Fannin County in a case No. 6677, wherein the State of Texas was plaintiff and appellant was defendant. The State in the trial of the case in the court below failed to introduce the information. Appellant in the court below objected to the intro-

duction of the affidavit on the ground that an affidavit in the County Court charging appellant with violating the local option law, does not make a case pending in the County Court and that there is no case pending in the County Court until the information is filed in the case. The court overruled this objection and it is earnestly insisted in this court that the State failed to make out a case because it failed to show an information was filed in the case in which the subpoena had been issued. The word "pending," legally speaking, means a matter undecided. As to when a case is said to be "pending," under our decisions, is not free from difficulty. Article 26 of White's Penal Code, says: "A 'criminal action,' as used in the Code, means the whole, or any part of the procedure which the law provides for bringing offenders to justice; and the terms, 'prosecution,' 'criminal prosecution,' 'accusation' and 'criminal accusation,' are used in the same sense." Article 467, Code of Criminal Procedure, provides that: "An information shall not be presented by the district or county attorney until oath has been made by some credible person, charging the defendant with an offense. The oath shall be reduced to writing and filed with the information. It may be sworn to before the district or county attorney, who, for that purpose, shall have power to administer the oath, or it may be made before any officer authorized by law to administer oaths." In the case of Evans v. State, 36 Texas Crim. Rep., 32, it was held: "It is no ground to quash an information that the defendant has been arrested upon the complaint before any information was filed." The complaint may be filed before the information has been filed or presented. It has been held by this court that a case will not be dismissed because an information is insufficient, but that the case will be reversed and remanded. In the case of Lum Wood v. State, 27 Texas Crim. App., 538, this court, speaking through Judge Willson, stated, the information being defective, the conviction must be set aside, "but the complaint being in all respects a sufficient one, a valid information may be presented upon it and the prosecution will not, therefore, be dismissed, but the cause is remanded that another information may be presented should the county attorney see proper to so do." The affidavit in this case showing the same to be a filed paper and being filed at, a time previous to the issuance of the subpoena and the execution of the bail bond, it may be stated that the prosecution had commenced in the County Court and was pending. This court in the case of Leal et al. v. State, 51 Texas Crim. Rep., 425, held that where a complaint was filed for a misdemeanor in the County Court and a capias issued thereon and bail bond given by the defendant before an information was filed upon such complaint, the clerk acted without authority to issue capias and file bond, and the County Court had no jurisdiction to forfeit the bail bond. In the case of Coleman et al. v. State, 32 Texas Crim. Rep., 595, this court held that a complaint filed in the County Court may form the basis of the bond, that is, when a complaint has been filed in the County

Court the appellant may be required to give a bail bond for his appearance to answer the charge specified in the complaint. As to whether the information was filed or not is a question of fact and not a ground for quashing the bond as a matter of law. Appellant's bond was forfeited in that case and this court affirmed the judgment. It may be said that there is an apparent conflict between this case and the case of Leal, supra. However, without attempting to reconcile these two opinions and without deciding what ought to be the proper course in proceedings to forfeit bonds that have been taken in County Courts before the information was filed, we do hold that the making of the complaint and the filing of the complaint in the County Court is the commencement of a criminal action, as the information can not be filed until the complaint or affidavit is made and that the information must be based upon the complaint, and, therefore, when the complaint is filed it may be said that the case is pending in the County Court. There is, however, another view to take of this case, and it is this: A subpoena has been issued, as the record here shows, commanding the witness to appear to give testimony in a certain numbered cause then pending in the court. The record shows that a complaint had been filed corresponding to the number on the affidavit. Now, the question is, can the appellant be heard to question the regularity of the proceedings in the County Court? We think not. It is true in the case of Columbus Moore v. State, 44 Texas Crim. Rep., 159, this court held that an officer must be in the discharge of a legal and official duty and that the bribe must be offered to him to violate this legal and official duty before a party could be guilty of bribery, and that the custody of a prisoner must be a legal custody before a man could be guilty of offering a bribe to release the party within the meaning of the law. This was again followed in the case of Ex parte Richards, same volume, page 561. It will be seen that in both the Moore and Richards cases, supra, that they were cases where the party himself was in custody and offered the bribe to be released, and the court held to make him liable, the arrest must be legal. In the case of Moseley v. State, 25 Texas Crim. App., 515, this court held that a peace officer, who is prosecuted for accepting a bribe to release a prisoner can not impeach the legality of the arrest as a defense. We think that this case is distinguishable from the Richards and Moore cases, supra. Judge Willson in the Moseley case, supra, stated: "We are of the opinion that in a prosecution for this offense it is not permissible for the defendant to question the legality of his custody of the prisoner. Such an issue is irrelevant and immaterial. The moral obliquity of this offense is the same where the custody of the prisoner is illegal as where it is legal, and the injury to public justice is the same." See also Florez v. The State, 11 Texas Crim. App., 102. Here the proof shows that appellant knew a complaint was filed against him; he had executed bond for his appearance; he knew that the complaint charged him with selling whisky, in violation of the law, to the

witness Hall, and he knew Hall had been subpoenaed as a witness. Now, the question is, is he permitted to question the regularity of the proceedings and to show or claim release on the ground that no information had been filed? We think not. It was irrelevant and immaterial and the obliquity of his offense is the same whether the information was filed or not.

3. Appellant complains that the court below erred in not submitting the issue to the jury as to whether the witness Hall was an accomplice or not. The appellant in this case took the stand and testified that he did not offer a bribe to the witness Hall, but that Hall approached him and sought to be bribed by the appellant. The court submitted this issue to the jury as follows: "I charge you, gentlemen of the jury, that it is no offense against the laws of the State for a party to try to induce another to submit him an offer to take a bribe. I, therefore, charge you that if you find from the evidence that the defendant tried to induce Tom Hall to make him (Smalley) an offer to take a bribe, or if you have a reasonable doubt as to such fact, you will find defendant not guilty." On this issue the appellant testified that he never offered the witness Hall anything to leave; that he knew he was charged in the County Court with violating the local option law by selling whisky to Tom Hall. He denies that he had ever sold any whisky to Tom Hall. The appellant further testified that Tom Hall sent him a message to the effect that if he, appellant, would give him some money that he would leave. Appellant states that he sent Hall word that he would not do any such thing; that Knight suggested to him that if he would write something like the following and have Tom Hall to sign it that he could not testify: "I, Tom Hall, offer and agree for $25 not to appear and testify." Now, the point is made that this testimony makes the witness Tom Hall an accomplice and that, therefore, that issue should have been submitted to the jury. To make a witness an accomplice there must be a crime being committed. The witness must be connected with the crime. The facts as stated by appellant do not make the witness Hall guilty of any crime. It does not make him a party to a crime that is being committed by the appellant. For the court to so have charged in this case, it strikes us, would have been prejudicial to the appellant and was not the law of the case. See the case of Chitister v. State, 33 Texas Crim. Rep., 635.

We think the proof in the case establishes the guilt of appellant, and there being no errors the judgment of the court below is affirmed.

*Affirmed.*

### ON REHEARING.

#### April 19, 1910.

McCORD, Judge.—On February 23 of this year the judgment of the lower court was affirmed. On March 10 appellant filed a motion for rehearing vigorously assailing the original opinion, and contend-

ing that this court was in error in holding that there was a case pending in the County Court of Fannin County when the bribe was offered to the prosecuting witness not to appear at court and testify; and, second, that this court was in error in holding that the court below did not err in omitting to charge the jury that the State's witness Hall was an accomplice, and that his testimony would have to be corroborated, and in not submitting the issue to the jury as to whether or not he was an accomplice.

Adhering to our former opinion, the motion for rehearing must be overruled. There has been nothing presented in the motion that would cause us to depart from our original opinion. We deem it necessary, however, to emphasize our holding that the court below did not err in failing to submit the issue as to whether Hall was an accomplice or not, and we will here review the testimony of the prosecuting witness Hall and the appellant, and the deduction that we draw from their testimony is conclusive that there is no testimony that would suggest that the witness Tom Hall was an accomplice. Tom Hall testified that he had been summoned by the State of Texas as a witness against appellant in the County Court of Fannin County, wherein the defendant was charged with violating the local option law, and that on the night of the 28th of June, 1907, the witness was at an ice cream supper at Mr. Vaughan's residence, and that appellant approached him on that night and called him off, and offered him $25 to leave the country, and he had a written paper there and wanted witness to sign it. Witness declined to leave, refused to be bribed, and also refused to sign the paper. The witness testified further that some days thereafter he was at work in the field with one Burrel Smith and one John Crouch, and appellant came to the field where he was at work about 12 o'clock in the daytime, and called him off some little distance from the other parties and again stated to the witness that he would give him $25 to leave, and for him to sign the paper. Witness says he again refused, when appellant assaulted him, and while beating him he was demanding that he sign the paper and demanding that witness take the $25 and leave the country. That the witness further testified appellant carried him away from the other parties into a corn field, and there they met up with one Smithey and one Wilkerson, and appellant called on Smithey for a pencil, and there made witness sign the paper. He could not tell exactly what was in the paper, but to the best of his recollection it read about as follows: "I, Tom Hall, promise and agree to sign before witnesses to leave for $25." The witness Smithey testified that he was down in the field with the witness Hall hoeing cotton when appellant came down there and called Hall off; that he did not understand what passed between them, but shortly he heard Hall holloing and appellant beating him and asking him if he was going to sign, and that Hall was refusing to sign. This witness further testified he was at the ice cream supper and heard appellant say to the State's witness Hall that

he had a paper there that he would like for him, Hall, to look at, and they stepped away from the door, and he heard nothing further. Clarence Smithey testified that he was horseback on the day of the difficulty, riding along the road, and he heard the witness Hall holloing, and at that time they were coming across the woods, and appellant was leading Hall, or rather shoving him along. Jim Vaughn testified that he saw appellant hand Tom Hall a paper at his house on the night of the ice cream supper, and saw Hall hand the paper back to appellant, and heard him tell appellant he could not and would not sign it. The witness T. E. Wright testified that appellant came to him shortly before this difficulty and asked him if he supposed that Hall would appear against him in that whisky case, and requested the witness to tell Hall that he did not want him to appear, and if he did, he was going to whip the devil out of him. The witness further testified that appellant asked him "if a witness signed a contract in a case not to appear against a person in a case, if he would sign that contract on Sunday would it be just as good as it would be if he signed it on a weekday," and appellant further asked witness if he knew whether Hall was going to leave the country or not. Appellant took the stand and testified that he had never offered the witness Hall anything to leave the country; that he knew he was charged in the County Court with violating the local option law by selling whisky to the witness Tom Hall. Appellant further testified that one Elmer Knight came to his house one Sunday morning and said that Tom Hall told him to come down there and see if he, appellant, would give him some money to leave, and that he would leave if appellant would give him the money. Appellant stated that he told Knight that he would not give him any money if he was going to be hung. Knight replied that Tom would leave if appellant would give him some money. Appellant refused to do this, and says that Knight suggested that he, appellant, make an offer in writing and get him (Hall) to sign it, and that they would come up then and Hall could not testify, and suggested to appellant that he write about as follows: "I, Tom Hall, offer and agree for $25 not to appear and testify," and suggested to appellant that if he would make this offer that way or before a witness that Hall could not testify. Appellant testified further that he prepared the writing as above suggested and presented same to the witness Hall at Vaughn's for him to sign; that he refused to sign the paper, but said that if appellant would pay him $25 he would sign the paper. Appellant testified that he would not offer to pay him $25 or any other amount and did not pay him a cent. That he positively refused to sign the paper. Appellant further testified that after Hall would not sign the paper he tore it up. That a few days after that he went down in the field where Hall was at work, but did not have any paper; that the reason he went down in the field was because Hall had come up to court and swore a lie against him for selling whisky, and that he went down there to straighten that up with him

a little, "like a fellow generally does." That he accosted the witness Hall and asked him why he swore a lie against him, and asked him if he did not know he was liable to get a thrashing about it. He said that Hall stated that he had to get out of it himself, was why he told on appellant. And continuing, appellant says: "I asked him then if he would sign a lie bill, or statement, showing he had lied about it, and he said he would not do it, and I thrashed him a little, and I asked him once in a while, I would stop and ask him if he would sign it, and he would say no, and he finally said he would sign it, and I told him all right. Hall himself had been chopping cotton there, he and some other boys. Hall was behind about 150 yards, and I did not know but what they would quit and come down there with a gun, and I did not have any paper, and I just thought I would go up to Dillard McBroome's and get a pencil and he stayed in the corn patch, and I went up there and got a pencil and paper and I just wrote out a statement showing he had sworn falsely and he signed it. I never gave him any money and never offered him any money, and all I did was to try to get him to make me an offer. I had been advised that he could not testify if he did." This is substantially the testimony in the case, and we can not see from this testimony any guilty participation whatever on the part of the witness Hall. Hall's testimony excludes such an idea. Appellant's own testimony does not suggest such a theory. Hall's contention was that appellant made him the proposition to bribe him, and thrashed him because he would not be bribed. Appellant's theory was that he tried to get him to sign the paper down at Vaughn's house so as to compromise him as a witness when he should testify, and that he thrashed him because he was not willing to sign a lie bill.

We therefore hold that the court below did not err in not submitting the issue of accomplice testimony to the jury, and that appellant's motion for rehearing is without merit, and the same is in all things overruled.

*Overruled.*