STATE, Respondent, v. GUFFEY, Appellant. .

(163 N. W. 679.)

(File No. 4045.   Opinion filed June 26, 1917.)

1. Criminal Law—Larceny of Horses—Declarations Concerning Guilt, in Defendant's Presence, Admissibility—Failure to Request Instruction, Effect.

Where testimony tending to show while officers were making an official inspection of alleged stolen horses in a state other than that in which they were stolen, discussing brands and the men who placed the horses there; that defendant entered the corral and observed that inspection was being made, that he must have known that himself and a co-defendant were under suspicion, the inference being plain that he entered the corral to see and hear what was being said and done by the officers, **held**, that it was for the jury under proper instructions to determine whether he heard what was said, and the probative force and effect to be given this evidence; that while trial court might properly have instructed that unless accused knew and heard what was said and being

done by the officers, the evidence should be disregarded by jury; yet, no such instruction having been requested, error cannot be predicated upon failure of court to give such admonitory instruction.    Held, further, that such evidence was properly admitted.

2.    Same—Larceny—Declarations re Guilt, in Defendant's Presence—
Admissibility; Probative Force, Distinction Defined.

There is a distinction between the admissibility of such evidence and its probative force; and, at most, silence of defendant under such circumstances is but an implied acquiescence in the truth of statements made by others, and thus presumptive evidence of guilt; yet it is some evidence, and therefore, except where the statements are made upon an occasion and under circumstances in which the individual sought to be affected could not with propriety speak, as in progress of judicial investigation or discussion between third persons, not addressed to nor intended to affect accused or induce any action respecting him, so that for him to speak would be a manifest intrusion into a discourse to which he was not a party, the evidence is competent and should be admitted.

3.    Same—Larceny—Guilt; Presumption, Burden of Proof—Reason-
able Doubt by "Any" Juror—Instruction—Error.

In a prosecution for larceny, held, that an instruction that it is not necessary for defendant to put in any evidence or establish his innocence, that he is presumed to be innocent, which presumption remains until overcome by state's evidence beyond all reasonable doubt, that if the jury "or any member of the jury" entertain reasonable doubt as to defendant's guilt, then the jury should give him benefit of such doubt and find him not guilty, contains a substantially correct statement of the general rule as to burden of proof and presumption of innocence; but that that portion thereof referring to "any member" of jury is not the law; and refusal to give the instruction was not error; that the reasonable doubt requiring jury to acquit is one finding lodgement in minds of all the jurors, and not in mind of a single juror.

4.    Same—Larceny—Sufficiency of Evidence—Advising Verdict for
Defendant, Refusal, Whether Error Predicable Thereon.

Error cannot be predicated upon refusal of trial court to advise verdict of not guilty on ground of insufficiency of evidence in particulars specified in motion for verdict.

5.    Same—Larceny of Horses—Sufficiency of Evidence—Conduct of
Defendants—Changed Brands, as Elements of Guilt.

Evidence, in a prosecution for larceny of horses, held, sufficient in view of the conduct and statements of the two men, one of whom was found guilty on separate trial, when found

in possession of the recently stolen horses, and of the evidence of recently changed brands; such evidence being wholly inconsistent with any theory of their innocence.

6. **Same—Larceny Possession, as Circumstance of Guilt—"Unexplained" Possession, Rule, When Applicable—Instruction Sustained, But Criticised—Statute.**

An instruction, in a prosecution for larceny of horses, that "possession of stolen property immediately after the larceny" is a circumstance of guilt the jury may consider with all other evidence in the case, that if jury find defendant was in possession of stolen property they may consider the lapse of time intervening between theft and time when defendant was found in possession, etc., and that the weight of that circumstance, as well as other circumstances, is a question solely for jury, was proper, as against the objection that it is only "unexplained" possession which might warrant such inference; possession of recently stolen property being, in itself, a circumstance from which guilt may be inferred, subject to rebuttal, etc.; that it is only when accused attempts explanation that the character and effect of matters offered as explanatory bring in question their reasonableness and sufficiency to rebut such inference. In other words, where no attempt has been made to explain possession, accused is not prejudiced by court's failure to qualify the evidentiary effect of possession as "unexplained." But the language used by trial court as to recent possession being a circumstance of guilt, is not approved; its propriety may well be doubted, in view of Code Crim. Proc., Sec. 350, declaring that trial court "may state the testimony but must not charge the jury in respect to matters of fact." Such language, however, in view of all the instructions, held, not prejudicial.

7. **Same—Law—Instruction—Circumstantial Evidence, Consistency With Guilt, Sufficiency of.**

In a criminal prosecution an instruction that to warrant conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading on the whole to a moral certainty that accused committed the offense charged, that to warrant conviction on such evidence alone, such facts and circumstances must be shown as are consistent with each other, and consistent with guilt of accused, and such as cannot by any reasonable theory be true and the party charged be innocent, is approved.

8. **Criminal Law—Error—State's Argument to Jury re Court's Judgment to Suspend Sentence, or Vacate Verdict if No Evidence of Guilt—Prejudice.**

Remarks to jury in argument of a criminal case, to the effect that it is in judgment of trial court "to suspend sentence

* * * if he deems it best," and that if there is "no evidence
to find him guilty it is within the power of the court to set
aside" the verdict, **held** not prejudicial, upon the whole record,
court not having been asked to instruct jury to disregard them;
although such a line of argument should not be addressed to
jury, since it may tend to lead them to disregard their duties
and responsibilities as jurors, by passing them up to trial court
or appellate court.

Appeal from Circuit Court, Meade County. Hon. JAMES
McNENNY, Judge.

The defendant, William Jennings Bryan Guffey, was con-
victed of larceny of horses, and he appeals. Affirmed.

*Harry P. Atwater,* and *H. M. Lewis,* for Appellant.

*Clarence C. Caldwell,* Attorney General, *Byron S. Payne,*
Assistant Attorney General, and *A. P. Schnell,* State's Attorney,
for Respondent.

(1) To point one of the opinion, Appellant cited: 12 Cyc.
422.

Respondent cited: Peo. v. Byrne, 160 Cal. 217, 116 Pac.
521; Hardy v. State, 150 Wis. 176, 136 N. W. 638; Davis v.
State (Ala.) 31 So. 571.

(2) To point two of the opinion, Appellant cited: Ruling
Case Law, Vol. 1, p. 478, 479; Comm. v. Kenney, (Mass.) 49
A. D. 672; Kelly v. People, (N. Y.) 14 A. R. 342, 346; People
v. Koerner, (N. Y.) 48 N. E. 730; Greenleaf on Evidence, Sec.
197-8; Kaslin v. Comm., (Ky.) 1 S. W. 594; State v. Mullins,
(Mo.) 14 S. W. 625.

(6) To point six of the opinion, Appellant cited: State v.
Lehman, (Tex.) 51 Am. Rep. 298; State v. Gillespie, (Tex.) 84.
A. S. R. 411; State v. Robb, (Neb.) 53 N. W. 134; Jackson v.
State, (Tex.) 19 A. S. R. 839; Field v. State, 24 Tex. App. 422;
Morgan v. State, 25 Tex. App. 513; White v. State, 72 Ala. 195;
Lehman v. State, (Tex.) 51 Am. R. 298; Orr v. State, 107 Ala.
35, 18 So. 142.

Respondent cited: 25 Cyc. 153; Brown v. State, 41 Tex.
Cr. 232, 53 S. W. 866; Holt v. State, 39 Tex. Cr. 282, 45 S. W.
1016, affirmed on rehearing in 46 S. W. 829; Code Civ. Proc.,
Sec. 257.

(8) To point eight of the opinion, Appellant cited: State

v. Kring, 64 Mo. 591, 9 A. S. R. 547; McDonald v. People, (Ill.) 18 N. E. 817.

Respondent cited: Moore v. State, (Tex.) 28 S. W. 686; Locklin v. State, (Tex.) 75 S. W. 305, 308.

SMITH, J. Appellant, Guffey, was arrested and jointly indicted with one James, charged with the larceny of certain horses; the property of one Price. Appellant demanded and was accorded a separate trial. Both Guffey and James were arrested in Miles City, Mont., with horses in their possession claimed by Price. The horses alleged to have been stolen ran with a band of 60 or 65 horses near Willow Flat in Meade county, and were last seen by Price at his ranch about the middle of June, 1915, and were seen on the range between the 20th and 30th of June. On July 23d, Cicely, a deputy sheriff residing at Eklaka, Mont., met James and Guffey on the Little Powder river, driving 15 head of horses, and had a conversation with them; asked where they were going and where they came from; they did not say; asked them if they did not know it was against the law to move horses out of the state without being inspected; told them what the penalty was. James said they got most of the horses on Cottonwood below Alsada; had traded part of them on the road. The witness finally made an official inspection of the horses. James and Guffey described the brands, and he put them on the inspection blank. The names given were R. C. James and W. B. Guffey. They did not give their address for entry on the inspection slip. Guffey paid the inspection fee after James had tendered a bill which the witness could not change. Witness testified to having seen James and Guffey, at different times in June, riding over the country in the vicinity in which Price's horses ranged and about the time these horses disappeared. The latter part of July, Guffey and James were found in Miles City, Mont., in possession of the horses claimed by Price. The horses were in a corral at the Neil Hardin Livery Barn. The corral was about 24x30 feet. One Richardson, state stock inspector, and one Trescott, undersheriff of Custer county, were examining the horses. Guffey was on the corral fence, and while they were examining the horses came into the corral. Richardson and Trescott were examining the brands and the condition they were in and were talking about burnt over brands and the men who

had the horses. Portions of this conversation were received in evidence over appellant's objections, and error is assigned. The testimony of the officers was to the effect that accused was in the corral when the conversation occurred; that he knew and could see that they were inspecting the horses which he and James had put into the corral; that they were all moving about the corral, and sometimes the accused was right against the officers, at other times, across the corral. Richardson testified that the conversation was loud enough to be heard by any person who was near or close to the corral. The accused said nothing—took no part in the conversation. Richardson said to Trescott, "I don't think we have got enough on them." Richardson replied: "From the looks of what we have here, we have got plenty to hold them on suspicion." After this conversation, the officers turned and walked to the corral fence. Guffey was just ahead. He walked over to where James was sitting in a wagon. The officers followed over to the wagon and asked them about the horses; told them the brands were burnt over, and they would have to arrest them; took them to a rooming house, where James said he had left a check given him by Jones for horses sold to him; went to the jail and booked them. Guffey said his name was W. B. Bryan; James gave his real name. Numerous witnesses testified that the original brand on the horses was Price's, but that it had been changed by a process of wet branding over.

[1] It seems quite clear that when Guffey saw the officers examining the horses, and himself entered the corral and observed what they were doing, he must have known that both himself and James were under suspicion. The officers were examining and discussing the brands and the men who had placed the horses in the corral. The inference seems plain that the accused entered the corral to see and hear what was being said and done by these officers. It was for the jury, under proper instructions, to determine whether he heard what was said, and the probative force and effect to be given to this evidence, and it would have been entirely proper for the trial court to have instructed the jury that, unless the accused knew and heard what was said and was being done by these officers, this evidence should be entirely disregarded by the jury. If such an instruction had been asked and refused by the trial court, the accused might have

assigned error. But no such instruction was requested, and error cannot be predicated upon the failure of the trial court to give such an admonitory instruction when no request therefor was made by the accused.

[2] The distinction between the admissibility of such evidence and its probative force and effect is pointed out in Kelley v. People, 55 N. Y. 565, 14 Am. Rep. 342, a case cited in appellant's brief, in which case the court said:

"When an individual is charged with an offense, or declarations are made, in his presence and hearing, touching or affecting his guilt or innocence of an alleged crime, and he remains silent when it would be proper for him to speak, it is the province of a jury to interpret such silence, and determine whether his silence was, under the circumstances, excused or explained. At most, silence under such circumstances is but an implied acquiescence in the truth of the statements made by others, and thus presumptive evidence of guilt, and in some cases it may be slight, except as confirmed and corroborated by other circumstances. But it is some evidence, and therefore, except in those cases where the statements are made upon an occasion and under circumstances in which the individual sought to be affected could not with propriety speak, as in the progress of a judicial investigation, or in a discussion between third persons not addressed to nor intended to affect the accused or induce any action in respect to him, so that for him to speak would be a manifest intrusion into a discourse to which he was not a party, the evidence is competent and should be admitted."

In People v. Byrne, 160 Cal. 217, at page 234, 116 Pac. 521, at page 529, the court said:

"Whether the circumstances are such as to make the failure to reply proper evidence tending to show an admisison, is, in the first instance, a question for the trial court. We are of the opinion that the evidence here was sufficient to support a conclusion on the part of the trial court that it, prima facie, showed that Poole's statement was made in the presence  *  *  *ʌ of defendant, that defendant understood its meaning and bearing, that it was one that might, under all the circumstances shown, be held to naturally call for some action or reply on his part, and that the occasion and circumstances were such as to afford

him an opportunity for reply. This being so, the evidence was admissible as tending to show an admission by defendant."

In Davis v. State, 131 Ala. 10, 31 South. 569, in discussing the admissibility of this class of evidence, the court said:

"The defendant was shown to have been near enough to hear the conversation, and it was not rendered inadmissible because the witness could not state positively that he did hear it. Whether he heard it or not was a question for the jury."

Most of the authorities cited by appellant are discussions of the probative force and effect of this class of evidence and the weight which should be given it by the jury, and not of its admissibility. Ruling Case Law, 478 (15); Wharton, Criminal Evidence, p. 1410. The trial court did not err in receiving this evidence.

[3] Appellant assigns as error the refusal of the following instruction:

"The court further instructs the jury as a matter of law that it is not necessary for the defendant to put in any evidence or to establish his innocence. The law presumes the defendant to be innocent, and that presumption remains with him until overcome by the evidence on the part of the state beyond all reasonable doubt. And in this case at this time, if the jury, or any member of the jury, entertain a reasonable doubt as to the guilt of the defendant of the charge contained in the information, then it is the duty of the jury to give the defendant the benefit of such doubt and return a verdict of not guilty."

This instruction contains a substantially correct statement of the general rule as to the burden of proof and the presumption of innocence, but has coupled with it a statement that:

"In this case at this time, if * * * any member of the jury entertain a reasonable doubt as to the guilt of the defendant, * * * it is the duty of the jury to give the defendant the benefit of such doubt and return, a verdict of not guilty."

Such is not the law, and the refusal to give the instruction was not error. The reasonable doubt which requires the jury to acquit is one which finds lodgment in the minds of all the jurors, and not in the mind of a single juror.

[4] Appellant assigns as error the refusal of the trial court to advise the jury to return a verdict of not guilty, on the

ground that the evidence is insufficient in various particulars specified in the motion. Error cannot be predicated upon such refusal. State v. Stone, 30 S. D. 23, 137 N. W. 606; State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912C, 795.

[5] Appellant also assigns insufficiency of the evidence to sustain the verdict. We shall not attempt to review the evidence, further than to say that, in our judgment, it is amply sufficient. The conduct and statements of the two men, when found in possession of the recently stolen horses, and the evidence of recently changed brands, were wholly inconsistent with any theory of their innocence, and this court held in the case of State v. James, 164 N. W. 91, that like evidence of the same facts was sufficient proof of the corpus delicti, as well as the venue of the offense charged.

[6] Appellant assigns error in a portion of the court's general charge to the jury which reads as follows:

"I charge you, gentlemen, that possession of stolen property immediately after the larceny is a circumstance of guilt which the jury would have a right to consider with all other evidence in the case, and the weight, if any, that should be given to such a circumstance would be a question solely for the jury, and in arriving at and determining what weight you would give to such circumstances, if you find he was in possession of stolen property, you would have a right to take into consideration the lapse of time that intervened between the theft and the time at which the defendant was found in possession, the character of the property, etc. * * * As I say, gentlemen, the weight to that circumstance, as well as any other circumstance, is a question solely for the jury."

Appellant's criticism of this instruction is that mere possession of recently stolen property is not, in itself, a circumstance from which the jury may infer guilt, but that it is only "unexplained" possession which might warrant such inference. Appellant is in error in this contention. Possession of recently stolen property is, in itself, a circumstance from which guilt may be inferred, though such inference may be rebutted and completely destroyed by evidence of facts and circumstances which might reasonably explain such possession and show that it was innocently acquired. It is only when the accused attempts an expla-

nation that the character and effect of the matters offered as explanatory raise a question as to their reasonableness and sufficiency to rebut the inference which the jury may otherwise draw from the fact of recent possession. In other words, where no attempt has been made to explain possession, the accused cannot be prejudiced by the failure of the court to qualify the evidentiary effect of possession as "unexplained." It is only when some explanation is offered that the question arises, and is material, whether possession is "explained" or "unexplained."

In this case, the court properly instructed the jury that the lapse of time between the taking of the property and the time of defendant's possession should be considered in determining the weight to be given to the fact of possession. Where there was evidence tending to explain possession of recently stolen property, it was held error to charge the jury that recent possession of stolen property is prima facie evidence of guilt for the reason that such an instruction does not submit to the jury the question whether the explanation offered is credible or satisfactory. Orr v. State, 107 Ala. 35, 18 South. 142. When no explanation appears or is attempted to be made, no such question arises. In many states it is held that a statement made at the time defendant is discovered in possession of the goods explanatory of his possession is admissible in evidence as a part of the res gestae and is admissible as well, against as for, the defendant, and that it is open to the defendant to explain his possession by any evidence bearing upon the question, even though he gave no explanation at the time he was found in possession. The record discloses that, about the time of his arrest, the accused said he bought the saddle horse from a widow woman whose name he did not know; but who lived on Thompson creek. To another witness he said he got the horse from a widow woman in the southern part of Fallon country; did not know just what creek she lived on; that he could go there, but did not know the name of the place; and James said in the presence of Guffey that he got the horses sold to Jones from a man by the name of Brown, but did not know who he was nor where he lived. On another occasion, shortly after his arrest, the accused said the widow woman from whom he bought the horse was Mrs. Mc-Cracken.

The trial court instructed the jury as to the probative weight of this evidence, as follows:

"You would also have the right to take into consideration any explanations of that possession that are given or offered in the case, and, too, you would be the sole judge as to the character and what weight you would give any such explanations, and you have the right to say whether such explanation is satisfactory. * * * But after considering all the evidence, gentlemen, if you entertain a reasonable doubt as to the guilt of the defendant, it would be your duty to resolve that doubt in his favor and acquit him."

[7] The trial court also instructed the jury:

That the state was relying in part upon circumstantial evidence; that such evidence, if sufficient, might warrant a conviction; but that, "to warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading on the whole to a satisfactory conclusion, and pointing to a moral certainty that the accused committed the offense charged; and it is invariably the rule of law that, to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other, and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent; and in this case, if all the facts and circumstances relied upon by the state to secure a conviction can be reasonably accounted for upon any theory consistent with the innocence of the defendant, then the jury should acquit the defendant."

A separate review of each of numerous other assignments upon refusal of instructions requested by appellant is impracticable at this time. We have given them all careful consideration, and in view of the full, carefully prepared, and correct instructions given by the trial court in its general charge, we are convinced that the trial court committed no prejudicial error in such refusals.

[8] Appellant further assigns as error a number of statements in arguments to the jury by the district attorney and his assistant, alleged to be prejudicial and unjustifiable. Only two

of these are of such character as to justify consideration. In his closing argument, the assistant state's attorney said:

"It is in the judgment of the court to suspend sentence of the court if he deems it best," and, "if there is no evidence to find him guilty, it is within the power of the court to set that verdict aside."

The record discloses that these statements were claimed to have been made in answer to arguments addressed to the jury by defendant's counsel. Upon the whole record in this case, we are not convinced that appellant's legal rights were prejudiced by such statements. It may not be improper to say, however, that such a line or argument should not be addressed to the jury, for the reason that it may tend to lead them to disregard their duties and responsibilities as jurors, by passing them up to the trial or appellate court. 2 Ruling Case Law, p. 418. In many cases statements of similar import have been held to be reversible error. However, we are not convinced from the record in this case that the jury were or might have been influenced by these remarks, nor that appellant himself regarded them as prejudicial at the trial, for the reason that he did not ask the court to instruct the jury to disregard them, as was done in the case of State v. Pirkey, 24 S. D. 533, 124 N. W. 713. Had such a request been made and refused by the trial court in the presence of the jury, as was done in that case, prejudice might be inferred. Moore v. State (Tex. Cr. App.) 28 S. W. 686; Locklin v. State (Tex. Cr. App.) 75 S. W. 305.

We do not approve the language used by the trial court in the instruction that "possession of recently stolen property is a circumstance of guilt." In many states such a charge is held to be reversible error. The propriety of any instruction as to the sufficiency of any particular kind of evidence to warrant a conviction may well be doubted in those jurisdictions in which the court is prohibited by law from expressing an opinion upon the weight or sufficiency of the evidence, as in this state, where the Code declares that the trial court "may state the testimony but must not charge the jury in respect to matters of fact." Section 350, Code Crim. Proc.; 25 Cyc. 135, notes 22 and 24. But, upon a careful examination of the whole instructions, we are inclined to hold that the language used by the trial court in this

respect could not have been understood by the jury in a sense prejudicial to appellant.

Appellant also assigns error in certain rulings upon evidence, but we are satisfied that none of them is of sufficient importance to merit discussion. We find no prejudicial error in the record.

The order and judgment of the trial court are affirmed.