WILJ. BARNES v. THE STATE.

No. 9433.     Delivered May 13, 1925.

1.—Robbery—Charge of Court—Defensive Theory—Failure to Submit.

Where, on a trial for robbery, appellant admitted his participation in the offense, but the overwhelming proof showed that his connection was in the capacity of a detective, with full knowledge of that fact by the peace officers, it was error for the court to instruct the jury in effect to convict, if appellant did aid by act, or encourage by words those engaged in the commission of the offense, and in failing to charge the issue of his intent. Following Pigg v. State, 43 Tex. 108 and numerous other cases cited.

2.—Same—Evidence—Held Insufficient.

Where, in the instant case, the overwhelming evidence established that appellant's participation in a robbery was in the capacity of a detective, and that he was acting under the advise and instructions of peace officers, whom he kept fully advised, and aided in the apprehension of the real robbers, in our view, to sanction a conviction upon these facts would be intolerable, and the judgment of the lower court is reversed, and the cause remanded.

Appeal from Criminal District Court No. 2 of Dallas County. Tried below before the Hon. Chas. A. Pippen, Judge.

Appeal from a conviction of robbery; penalty, twenty-five years in the penitentiary.

The opinion states the case.

*Randolph Caldwell, J. Hardy Neal,* and *Merritt & Leddy,* for appellant.

*Shelby S. Cox,* District Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Appellant was convicted in the Criminal District Court of Dallas County of robbery, and his punishment fixed at twenty-five years in the penitentiary.

We resist a strong temptation to discuss at length facts showing that for some reason parties in authority at Dallas were not in accord as to the merits of this case, wherein it appears to the dispassionate mind that a young farmer, raised in Arkansas, who had armed himself with a diploma from some so-called detective school, came to Dallas to exploit his knowledge and ability in ferreting out crime; and did the best he knew how in a rather hasty and meteoric effort along that line. Without stating the testimony fully, it shows apparently without contradiction that in all that was said and done by this appellant he was acting in good faith and with what he thought full knowledge of, and in connection with, the police authorities of the city of Dallas. He conferred with said officers continuously up to the commission of the alleged robbery, and beyond question thought himself to be acting under their instructions in associating himself with the other men engaged in the criminal enterprise and in going through his part in same. At once upon the consummation of said alleged crime he reported to police headquarters what had been done and that he had taken part in the matter and had part of the proceeds of the robbery in his pocket. Unfortunately for him, he had acted with such unusual speed as to not give the local officers time of acquaint themselves with his standing or record, or to acquire confidence in his efforts, and the information he had obtained and was ready to give was not at once received or acted upon. The county authorities, to whom the robbery was reported, stepped in and appellant was arrested. The sheriff of the county, upon some investigation, and learning of the facts, released appellant who then proceeded to act with the sheriff and aided in the capture of one of the men implicated who seemed to be the chief actor in the robbery. According to the sheriff appellant avowed his readiness and willingness to further aid the officers in the capture of another man shown to have taken part. Appellant left for his former home in Arkansas, giving to the sheriff his address. The district attorney and the sheriff seemed not to have been in accord in their views regarding appellant's conduct, and he was indicted by the grand jury. A wire to the officers of appellant's home town in Arkansas revealed his presence there and he was brought back to what he had apparently expected to be the scene of his successful career as a detective, there put upon trial as a criminal and a participant in the robbery, was convicted and brings this appeal.

The city officials testified fully to his consultation with them, his telling them of the plans of the men with whom he had fallen in and whom he hoped to catch in the commission of crime. The sheriff

told of his release of appellant after investigation and of the fact that appellant aided him in the capture of the man Lawrence, and of appellant's promise to further aid him, and of his giving to him his correct address in Arkansas. Business men apparently of standing in Dallas testified that appellant came to them first with information that he believed he had fallen in with some men who had been robbing stores in Dallas and that he believed he could catch them and aid in their punishment; and said men testified to appellant keeping them informed as to the movements of said men and of their plans as far as he could obtain them. These men testified that on Friday night before the robbery Saturday morning, appellant came to them and told them that the parties whom he suspected, were going to hold a man up out in the country near Dallas the next morning and rob him. Said witnesses testified that these facts were communicated to the police authorities· who told appellant to go along with the men and get all the information he could concerning their actions and what they did and to report the matter at once back to said officers. One of these men said that appellant asked the officers if he might carry a pistol for his protection and was told that he could, and this witness said he lent appellant his pistol. One of the same witnesses said that appellant asked the officers if he might furnish the automobile to carry the party out to the place where they were going to commit the robbery, and was informed that it would be alright. The chief of police said about one o'clock on the day of the robbery, which had been committed about eleven o'clock appellant came to his office and told him that they had pulled the job and that he had his part of the money. The officer said he did not know appellant very well and did not know whether he was telling him the truth, and that he sent him away and told him he would look into it. Appellant went from the police headquarters to the Piggly Wiggly store where he narrated the facts to the manager of said store with whom he had been consulting. He told this witness that he had just come from the police headquarters.

Thompson, the man who was robbed, was in the habit of drawing money on Saturdays to pay cotton pickers, which fact was known to one Wright, as was also the road traveled by Thompson in going out to pay his cotton pickers. Wright was the man who gave the information to Lawrence, et al. of the fact that Thompson habitually drew such money and of the route over which he traveled. Wright was the chief witness for the State and admitted giving the information above mentioned to Lawrence, et al. and claimed that he was present when appellant came later and was told by Lawrence, et al. of the plans to rob Thompson. Thompson testified that appellant was in the car with Lawrence and Whatley when he

was held·up on Saturday morning. That Lawrence presented a pistol at Thompson and told him to throw up his hands and back out of the car, and that Lawrence took his money from him. Thompson said appellant stood by holding a pistol down by his side in one hand and that he said and did nothing except when Lawrence told him to put the Thompson car on the bum, appellant cut the wires under the hood. Appellant at no time denied his participation in the robbery to the extent of being present, having a pistol, and cutting the wires in Thompson's car, but asserted his innocent intent and that his sole purpose in all that he did was to aid in detecting crime and .to bring the real offenders to justice. The record is entirely devoid of anything supporting a contrary conclusion. Appellant is supported by the testimony of the officials and private citizens to whom he had revealed his plans and with whom he was in consultation. His attorneys asked special charges numbered 4 and 5 in substance that the jury be told that if he did not intend to appropriate Thompson's property but only intended to give the peace officers information leading to the apprehension of those engaged in the robbery; or if they found that appellant believed that in what he was doing he was aiding and assisting the officers and that he entertained no intention' to appropriate Thompson's money,—the jury should acquit. These charges were refused. The only presentation of appellant's defensive theory in the main charge is in that part which is as follows:

"I further instruct you that if you find and believe from the evidence, or if you have a reasonable doubt thereof, that the defendant, Barnes, accompanied the said Lawrence and Jim Whatley, if he did, on the robbery, if any robbery was committed, for the purpose of assisting in the apprehension of the said Lawrence and the said Whatley, or either of them, and that the said defendant, during the commission of said robbery, if any robbery there was, did not aid by act or encourage by words or gestures the said Lawrence or the said Whatley in the commission of the said robbery, if any, then you will acquit the defendant and say by your verdict not guilty."

This seems of no benefit to appellant because he admitted that he was present, and that he had a pistol in his hand, and that, at Lawrence's command, he cut the wires in Thompson's car. He emphatically denied having originated in whole or in part any plan to rob Thompson and affirmed that his whole and sole connection with the affair was as a detective and in order to catch and punish men whom he believed to be criminals. The question involved in his affirmative defense was not of his presence and participation but of his intention. Wright did not claim that appellant originated the plan but testified .to the contrary. The case, and appellant's right to an affirmative charge presenting the issue of his intention,

falls in the category of Pigg v. State, 43 Texas, 108; Johnson ·v. State, 3 Texas Crim. App. 590; Wright v. State, 7 Texas Crim. App. 574; Allison v. State, 14 Texas Crim. App. 122; Chitister v. State, 33 Texas Crim. Rep. 635; Sanchez v. State, 48 Texas Crim. Rep. 592; Clay v. State, 4 Texas Crim. Rep. 556; Minter v. State; 70 Texas Crim. Rep. 645; Buster v. State, 151 S. W. Rep. 554. The paragraph of the court's charge which was excepted to should not have made appellant's right to acquittal be· forfeit if he aided by acts or encouraged by gestures. Such right should have been made to depend upon the matter of his intention.

We have given careful consideration to the facts revealed by this record, only the substance of which is set out in this opinion. In our view, to sanction a conviction upon these facts would · be intolerable. There is nothing suggesting that appellant ever entertained any intention to deprive Thompson of a cent of his money, but the contrary fully appears. Appellant's methods were not those of an experienced officer and the rapidity with which he worked seemed to take away the breath of the older men with whom he was attempting to act, and was well calculated to cause them to hesitate and want more information before they undertook to accept his methods or results. Appellant reached Dallas on Monday and was at his stopping place that night and in the next day or two became convinced that some of the men with whom he had come in contact were engaged in burglaries and robberies. On Wednesday he went with some matters that he had picked up, deemed by him evidential, and submittted his discoveries and beliefs to the proprietor of a store in Dallas, and later went with this man to lay the whole thing before the authorities. That his methods were crude and his movements hasty, and that he only consulted part of the officials and did not take them all into his confidence, would furnish no ground for believing him to be a thief or worthy of punishment.

Believing that neither under the law as given to the jury, nor under the facts of this case, this conviction should be allowed to stand, the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*