TAS AND NATH DEVER ET AL. v. THE STATE.

*No. 627.   Decided May 11th, 1895.*

### 1.  Conspiracy to Commit Crime—Indictment.

The parties to a conspiracy to commit crime must be named in the indictment, and there must be, at least, two principals. A conspiracy cannot be committed with less than two principals, because, it takes two or more to form a conspiracy.

### 2.  Same—Advising and Encouraging with Intent to Arrest the Parties.

A party who persuades and advises others to enter into a conspiracy to commit crime, without intending really to be a participant, or with the intent to secure their arrest, punishment and the probable reward, is guilty as a principal, the offense, to-wit, the conspiracy, being complete; for, when a person does a prohibited act, with the intent the law forbids, it will not avail him that he also intended ultimate good. If, by his acts and conduct, he encouraged, advised or persuaded others to commit the crime, he would himself be guilty regardless of whether he intended to consummate the conspiracy or not.  Distinguishing, Woodworth v. State, 20 Tex. Crim. App., 375.

### 3.  Same—Accomplice.

One who assists, commands or encourages another to commit an offense, or who prepares arms or aid of any kind for the purpose of assisting the principal in the execution of the same, is an accomplice to such an offense; and, where he becomes a witness against his co-conspirators, his testimony must be corroborated in order to warrant a conviction.

### 4.  Impeachment of Witness—Charge Limiting and Restricting.

On a trial for a conspiracy to rob a railroad train, where the father of defendants testified to facts strongly tending to prove an alibi. Held: He could not, on cross-examination, be asked questions of an impeaching character tending to elicit answers tantamount to an opinion from him that the defendants were guilty; and, where the court has refused to exclude such testimony, it was clearly error to fail or omit in the charge to properly limit the evidence to the proper and only purpose for which it could be admitted, if at all, viz.: to impeach the witness.

APPEAL from the District Court of Williamson.   Tried below before Hon. F. G. MORRIS.

Appeal from a conviction for conspiracy to rob a railroad passenger train; penalty, as to appellant Tas Dever, three years; and as to appellant Nath Dever, two years' imprisonment in the penitentiary.

The opinion states the main facts in evidence, and a further statement of the case is unnecessary.

*Makemson, Fisher & Robertson,* for appellants.—In all felony cases the law and the Constitution secures to the defendant a trial by jury, and the jury are the exclusive judges of the facts of the case.  It is a fact that Bill Mayfield was or was not an accomplice.  This was a controverted fact, and the court could not deprive the defendants of their right to have the jury pass upon it, by holding both ways on the question.  Code Crim. Proc., Arts. 10, 23, 276; Elizando v. State, 31 Tex. Crim. Rep., 243; People v. Bolanger, 71 Cal., 19, 20; Hamilton v. State, 26 Tex. Crim. App., 206; Boren v. State, 23 Tex. Crim. App., 28.

If Bill Mayfield was an accomplice his testimony should be corroborated.   The corroboration should show that the offense was committed

and also present facts tending to connect defendants with it.  Code Crim. Proc., Art. 741; Dill v. State, 1 Tex. Crim. App., 278; Gillian v. State, 3 Tex. Crim. App., 134; Coleman v. State, 44 Texas, 111.

Under the facts of this case Mayfield was an accomplice, and if so, there was no sufficient corroboration.  Leaving out his testimony, there is not a particle of evidence showing that a conspiracy was formed, and there is no evidence tending to connect the defendants with the conspiracy—had there been other testimony establishing a conspiracy by Mayfield and other parties.  Penal Code, Arts. 800, 802; Penal Code, Arts. 74, 75, 76, 78, 79; Phillips v. State, 17 Tex. Crim. App., 173; Anderson v. State, 20 Tex. Crim. App., 312; Steel v. State, 19 Tex. Crim. App., 430.

Mayfield performed acts which constituted an offense (if he swears truthfully), and his intent is presumed.  Penal Code, Art. 50.

A conspiracy can not be proved by a co-conspirator, but must be proved aliunde.  Menges v. State, 25 Tex. Crim. App., 712.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellants and Von Evans were jointly charged with the crime of conspiracy.  On the trial, Evans was acquitted, appellants convicted, and they prosecute this appeal.  The conviction was obtained mainly on the testimony of Billie Mayfield.  If he was an accomplice, this conviction must be set aside as to both appellants; as to Nath Dever because Mayfield is not corroborated, and as to Tas Dever because Mayfield is not charged in the indictment as a conspirator or party to the crime.  The rule in this respect is that the parties to the conspiracy must be named in the indictment, and there must be at least two principals.  A conspiracy cannot be committed with less than two principals.  It takes two or more to form a conspiracy.  Von Evans having been acquitted, he cannot be regarded as a conspirator. On the other hand, if Mayfield was not an accomplice, corroboration was unnecessary, and the evidence would be sufficient to sustain the conviction if no reversible error was committed in regard to other matters. ᐧ Under the evidence was Mayfield an accomplice?  What were his acts and what was his conduct?  His testimony shows that he was first approached by Nath Dever about the 1st of February, 1894, who spoke to him about robbing the train on the International & Great Northern Railroad.  In two or three days they had another and quite an extended conversation in regard to the same matter.  He at first demurred.  At next conversation, "I told him I was not a train robber, but, if he wanted to steal chickens, I was all right."  He did not recollect when the next conversation occurred, but they then became frequent.  They had a great many conversations, in which the various plans and details of plans were discussed.  Tas was not engaged in the first two conversations.  Finally, Von Evans was induced to go into the affair; Mayfield telling Tas Dever that Von Evans would make a good witness.  Their

first plan was to rob the train about February 12th or 15th. After much deliberation this was abandoned. Prior to February 12th, Mayfield took one Jack Steele into his confidence, and later on they (Billie Mayfield and Jack Steele) took Mayfield's father into their confidence. Jack Steele and the elder Mayfield sent Tas Dever to Burleson County, to look after some land matters, they jointly paying his way there and return. Steele then sent Tas Dever to Arkansas, with a letter of unlimited credit, and commissioned him to purchase cotton seed. On his return from this trip for Steele, the train robbery project was again considered and discussed in all of its details; Mayfield keeping Steele and the elder Mayfield informed of these matters. Finally, Billie Mayfield took one Secrest, constable at Georgetown, into his confidence, as he had more confidence in him than the other officers. Preparatory to the execution of their designs, Nath Dever and Billie Mayfield stole a wagon sheet from Adams at night, out of which sacks were to be made, and were made, by them, in which to carry away the money to be taken from the train, as well as to make bags to tie around the feet of their horses, to avoid being tracked by bloodhounds from the scene of the robbery. Mayfield agreed to furnish some of the arms, and to this end borrowed three pistols—one from Jack Steele, one from Kemp, and one from McAlpin; the McAlpin pistol being turned over by him to Tas Dever. They agreed to kill the conductor of the train "if necessary"; and, finally, the four, two Devers, Von Evans, and Mayfield, on Sunday evening, at old man Dever's barn, entered into the conspiracy formally, and consummated all their plans, to be executed on Monday night, March 12, 1894. Von Evans withdrew from the conspiracy, but the others were to execute it. On Monday, the three, the two Devers and Mayfield, met, went to Eidman's stable, took his two horses, rode them to Round Rock, ten miles away, where Mayfield took the train, and the Devers went three miles east to Palm Valley station, at which place Mayfield was to stop the train and the robbery occur. The train did not stop, and the plans came to naught. The officers, some half dozen, were on board the train, "armed to the teeth," stationed about the train for the purpose of resisting the train robbing and arrest the Devers. From about February 12th to 15th Secrest was kept informed of the plans of the boys, and, later on, the sheriff, his deputies, and City Marshal Brady were taken into Mayfield's confidence, and together they matured their plans to capture the Devers at Palm Valley, and for their part were to get a heavy reward for their capture; Mayfield to receive one-third of said reward. This is shown also by the testimony of Secrest. Mayfield says he did not intend to rob the train. When the officers went to Palm Valley on train, and long prior thereto, they knew of the plans to rob the train, and, "if necessary," to kill the conductor. They knew of the conspiracy formed on Sunday, and did not arrest the boys on Monday. Jack Steele was the confidant of Mayfield throughout, and loaned him his pistol. Mayfield took Von Evans and this pistol with him to the barn on Sunday, where the conspiracy was entered into and de-

tails agreed upon. The railroad officials were also informed of the plan to rob their train, but failed to stop the train at the point designated. Mayfield went into Eidman's barn over the door, unfastened it from the inside, and turned the horses out into the lot, so they could be caught and used in riding to the scene of the contemplated robbery. From Mayfield's testimony, there were so many conversations in regard to this contemplated robbery that he was confused both as to the number, and what was said and done at each, or where they all occurred; but he was engaged in all of them, and discussed the details each time. These agreements contemplated train robbery, and murder if necessary, and the officers knew of all these plans before it was to occur, and were to divide with Mayfield the reward to be secured. If this testimony of Mayfield is to be credited, it was known and understood by the officers that two felonies were in contemplation—train robbery, and perhaps murder. This they could have prevented at Georgetown before any of the parties left that point, for the conspiracy was complete, and they were informed of it. The reward seems to have depended on train robbery, and not upon the conspiracy. These being the facts, was not Mayfield an accomplice? Let us suppose that Mayfield had in terms requested or persuaded either of the young men to enter the agreement before it was formed; would he not have been guilty? He certainly would. Let us suppose that he made such request or gave such advice without intending to be a party to the robbery; would he not still have been guilty of the conspiracy? Let us suppose that he advised and encouraged others to make the agreement, intending to secure their arrest, punishment, and the probable reward; would these ultimate good or lawful purposes shield him from guilt? Certainly not. For when a person does a prohibited act with the intent the law forbids, it will not avail him that he also intended ultimate good; and, if he intended to do what the law forbade, there need not be any other intent. Now, then, did Mayfield enter into a positive agreement to rob the train? He did. Did he intend to enter into such agreement? He did. But it is replied that he did not intend to consummate the agreement. This may be so, but still he made it, if such was made. From another point of view, suppose he induced others to enter into such an agreement; would he not be guilty, let his ultimate intentions be what they may? His offense—the conspiracy—would be complete. A. desires and intends to kill B. on the first opportunity. C. is aware of this. He informs the officers. They are there at a convenient place. C. is present with A. B. approaches them. C. says to A.: "There is your man. Now is your time." And A. fires and kills B. The officers rush forward and arrest A. He is placed on trial for murder. C. is a witness. Would not he be an accomplice—yea, a principal? Certainly he would. Nor would he be shielded by the fact that he encouraged A. to shoot for the purpose of having him arrested and hanged. We have propounded this question: If Mayfield had requested, advised, or encouraged, in words, others to form the agreement, would he not be guilty? He certainly

would, be his ultimate intentions ever so laudable. Now, then, suppose he encouraged, advised, or persuaded others by his acts, his whole conduct; would he not be guilty, regardless of whether he intended to consummate the conspiracy or not? We think so. Let us look at this question from another standpoint. Our Code provides that one who assists, commands or encourages another to commit an offense, or who prepares arms or aid of any kind for the purpose of assisting the principal in the execution of the same, is an accomplice to such offense. Penal Code, Art. 79. The indisputable facts are that Mayfield knew that appellants intended to rob the train, and, with this knowledge, he furnished arms, assisted in obtaining horses for the purpose of being ridden to the place of the robbery, helped steal a wagon sheet to be used in the robbery. These acts were performed for the purpose of assisting the appellants in the execution of the robbery. Now, then, under these facts, will he be heard to say that he did not violate the law because he did not intend to consummate the robbery? We think not, because in furnishing the arms, etc., with knowledge of the use to which they were intended, an offense would have been committed if the robbery had been accomplished. Again, let it be conceded for the argument that Mayfield would not be an accomplice because he did not intend to assist in it himself or permit appellants to rob the train. The reply to this is that he did intend and evidently desired that appellants should make the attempt—the assault with intent to rob the train. To this he agreed most heartily, desiring, we suppose, to obtain the reward. In this we find an agreement positive to commit a felony—namely, assault with intent to rob—to which Mayfield was evidently a party, not only by acts and words, but in mind and heart; and, being thus connected with this transaction, he is an accomplice, and must be corroborated. We are aware of the opinion of Judge Willson in the case of Woodworth v. State, 20 Tex. Crim. App., 375. It was contended by the State that the conspiracy (agreement) to rob safes was made between Woodworth and Ben Hunt. Judge Willson held that as Hunt was not in fact a party to the agreement, and as it required at least two to make such agreement, the judgment should be reversed as to Woodworth. All that Hunt did was to make the agreement. He neither advised Woodworth nor Charles Withers to enter the conspiracy. He did not furnish arms, horses, or assist in stealing wagon sheets, or aid in any manner whatever. He was simply a passive, apparent party to the conspiracy. That case and this are not at all alike. The record contains a palpable error with respect to the following matter: W. P. Dever testified to facts strongly tending to prove that his sons were not at Round Rock on the night of the intended robbery, but were at home. Upon cross-examination he was asked this question: "Q. Why was it you said to Henry Purl, 'Do you think it was right to go into a plot to murder my boys?' " Devor replied: "The idea of several officers and Jack Steele and Dr. Mayfield going into a plot like that!" "Q. And he (Purl) said: 'I did not

go into the plot to murder your boys. I went into the plot to capture anybody that was there to rob the train.' And didn't Purl say to you: 'How could he, when you said they were not there?' Didn't you say: 'Why didn't you come and tell me about it, instead of going to murder my boys?' " Some other questions to the same effect were propounded and answered, the witness confessing that, in substance, he had such conversation with Purl. This question pointed with absolute certainty to the object of the prosecution in broaching this matter: "Q. And then you swear your boys were not there. How could it be a plot to murder your boys when you swear they were asleep in Georgetown?" This evidence was introduced to impeach the witness. To its introduction there was no objection. But a motion was afterwards made by counsel for appellant to exclude the whole matter. This was refused. In this there was error. But let us concede for the argument that this matter could have properly been introduced in evidence; then it was of the highest importance to the rights of the appellants for it to be properly limited to the proper purpose for which it was admitted. See, Drake v. State, 25 Tex. Crim. App., 293. W. P. Dever was the father of the appellants. The slightest intimation from him to the effect that he believed them guilty would not only tend to discredit him, whether properly or not, but would conclusively seal their fate. Why would such an intimation have such effect? Because the jury would naturally conclude that he had obtained from appellants confessions, direct or circumstantial, of their guilt, or that he believed the evidence of the State and all the testimony tending to prove alibi was false. In fact, with the jury, with such a hint, even from the father, the whole defense would crumble, whether justly or not; and Billie Mayfield would be in their estimation most cogently corroborated by the opinion of their father as to the guilt of the sons. Counsel for appellants properly excepted to the failure of the court to treat this matter so as to extract some of the poison, if possible. This was not done, and for this error, if for no other, under the circumstances of this case, the judgment should be reversed.

*Reversed and Remanded.*