1. WITNESSES ⊕⇒345(4)—IMPEACHMENT—CONVICTION OF FELONY.
   Testimony that the state's witness had been convicted in 1887 of assault with intent to murder, and served three years·in the penitentiary, having been released in 1890, was inadmissible to impeach the witness, who had been pardoned by the Governor, supposedly that he might be a witness, the conviction having been too remote.
   [Ed. Note.—For other ,cases, see Witnesses, Cent. Dig. §§ 1127, 1128.]

2. WITNESSES ⊕⇒345(4)—DISQUALIFICATION—IMPEACHMENT—CONVICTION OF FELONY.
   A conviction of felony may be interposed either as a disqualification of a witness, where there is no pardon, or, in case of pardon, as a matter of impeachment.    .
   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1127, 1128.]

Appeal from Austin County Court;  G. S. Cumings, Judge.

George Ward was convicted of violating the pistol law, and he appeals.   Affirmed.

C. Douglas Duncan, of Bellville, for appellant.   E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J.   This conviction was for violating the pistol law.

There is but one question in the case. The witness Brown makes out the state's case by showing that appellant had the pistol under circumstances under which he was not justified.   It developed on the trial that Brown had been convicted in 1887 of assault with intent to murder, and served three years in the penitentiary, under the said conviction. One or more attempts had been made to induce the Governor of the state some years ago to grant him a pardon.   These were not successful.   In the early part of the current year application was made by the county attorney for a pardon for Brown that he might be a witness supposedly in this case. The pardon was· granted.   All this is made to appear, and appellant seems to have interposed this conviction as a disqualification of Brown.   This contention was met with the pardon, and he then offered to prove the conviction as a matter of impeachment.   The ruling of the court with reference to this whole proposition is presented for revision.

[1, 2] We are of opinion the court did not err in rejecting the testimony as a matter of impeachment.   He had been out of the penitentiary since the year 1890, practically 27 years before the pardon was granted.   A conviction for felony may be interposed either as a disqualification where there is no pardon, or, in case of pardon, as a matter of impeachment, but where long time has elapsed, as in this case, such conviction cannot be used for the purpose of impeachment. The conviction was too remote.   This has

been the subject of a great many decisions. Had the conviction been of recent years and within the rules laid down and followed by this court, it would· have been error to reject the testimony for impeachment, but where such length of time has elapsed as here shown such testimony is not admissible.   It is unnecessary to cite the cases.   The matter of impeachment does not relate to the time of the pardon; it relates to the time of conviction.

Finding no error in the record, the judgment is ordered to be affirmed.

---

## SHIPP v. STATE.   (No. 4331.)

(Court of Criminal Appeals of Texas.   April 4, 1917.   On Motion for Rehearing, May 23, 1917.)

1. CRIMINAL LAW ⊕⇒678(3) — ELECTION BY COURT BETWEEN COUNTS IN INDICTMENT.
   In Texas, the trial judge, by selecting the count in the indictment on which the jury shall pass, elects for the state.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1581.]

2. CRIMINAL LAW ⊕⇒770(1)—INSTRUCTIONS—ELECTION BETWEEN COUNTS OF INDICTMENT.
   The state, through the trial judge, having selected the second count of the indictment as that on which the jury should pass, the charge should have submitted the issues under the allegations of such count.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1806.]

3. PERJURY ⊕⇒6—STATUTES—"FALSE SWEARING"—"PERJURY."
   Under Pen. Code 1911, arts. 304 and 312, defining perjury and false swearing, if a witness in a civil case had testified falsely, or had signed a false affidavit in support of motion for new trial that his former testimony was false, he would have been guilty of perjury, but he would not have been guilty of false swearing, "false swearing" being where any person deliberately or willfully under oath or affirmation makes a false statement by a voluntary declaration or affidavit which was not required by law or made in the course of a judicial proceeding, while "perjury" is a false statement, written or verbal, made under sanction of an oath, etc., necessary for the prosecution or defense of any private right or for the ends of public justice.·
   [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 7–17.
   For other definitions, see Words and Phrases, First and Second Series, False Swearing; Perjury.]

4. CRIMINAL LAW ⊕⇒44 — "ATTEMPT" TO COMMIT CRIME.
   Where an act is done with the intent to commit a crime, and tending, but failing, to effect its commission, it is an attempt to commit the ultimate crime; "attempt" being an intent to do a thing, coupled with an act which falls short of the thing intended.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 51.
   For other definitions, see Words and Phrases, First and Second Series, Attempt.]

5. CRIMINAL LAW ⊕⇒814(5)—INSTRUCTIONS—COMMISSION OF OFFENSE OTHER THAN CHARGED.
   The trial court improperly instructed the jury that under an allegation of defendant's at-

tempt to induce a third person to commit perjury they would be justified in convicting of an attempt to induce false swearing.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1979.]

6. PERJURY ☞29(2)—PROOF OF ALLEGATIONS.

In a prosecution for attempting to induce another to commit perjury or false swearing, where the indictment alleged that all of the testimony in a civil case given by such other was true, and that his affidavit, supporting motion for new trial, that he had testified falsely was false as a whole, it was incumbent that the state's proof or evidence should prove the truth of all the testimony set out in the indictment.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 98, 99. ]

7. PERJURY ☞37(1) — INSTRUCTIONS — PROOF OF ALLEGATIONS.

In a prosecution for an attempt to induce another to commit perjury or false swearing by making a false affidavit, the state having alleged the general false statement in solido, the court was required to charge that to convict the entire affidavit must be proven false.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 134.]

8. PERJURY ☞37(4) — FALSE AFFIDAVIT — PROOF.

In a prosecution for an attempt to induce another to commit perjury or false swearing by filing, in support of motion for new trial, false affidavit falsifying testimony, the falsity of the affidavit must be proved by two credible witnesses, or one credible witness, supported by the necessary statutory corroboration.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 138.]

9. CRIMINAL LAW ☞683(1)—REBUTTAL EVIDENCE.

In a prosecution for an attempt to induce another to commit perjury or false swearing, any testimony offered by defendant to meet that introduced by the state, combating or explaining, favorably to defendant. the testimony introduced by the state, should be admitted, since wherever one party introduces a fact thought to be beneficial, the opposite party has a right to meet it in any legitimate available way.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1615, 1617.]

10. PERJURY ☞32(9) — ATTEMPT—EVIDENCE.

In a prosecution for an attempt to induce another to commit perjury or false swearing by making a false affidavit, in support of motion for new trial, that his testimony in a civil case had been false, defendant had the legal right to disprove any fact relied on by the state as to the truth of the evidence given by the witness in the civil case, and to show the fallacy of any and all of such evidence, though the state introduced only that part of the witness' testimony stated in the indictment.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 116.]

11. PERJURY ☞32(9)—ATTEMPT—EVIDENCE.

In a prosecution for an attempt to induce another to commit perjury or false swearing by filing, in support of motion for new trial a false affidavit falsifying testimony, defendant had right to show truthfulness of witness' affidavit by direct or circumstantial evidence, by impeachment of the witness, or by attack on circumstances corroborating the witness.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 116.]

On Motion for Rehearing.

12. PERJURY ☞6—AFFIDAVIT WITH MOTION FOR NEW TRIAL.

A false affidavit, obtained and filed with motion for new trial, to be used on the motion, was in a judicial proceeding, so that any falsity in it constituted perjury rather than false swearing.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 7–17.]

13. CRIMINAL LAW ☞956(2) — NEW TRIAL — MOTION—EVIDENCE.

By direct provision of statute, the trial court may hear evidence on motion for new trial, either by affidavit or otherwise.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2374.]

14. PERJURY ☞10—FILING OF FALSE AFFIDAVIT IN JUDICIAL PROCEEDING.

The fact that a false affidavit, filed in a judicial proceeding, such as a motion for new trial, was or was not attached to the motion did not affect the question of perjury.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 36, 37.]

15. PERJURY ☞13—FALSE AFFIDAVIT.

Where defendant attempted to bribe a witness in a civil case to make a false affidavit, in support of motion for new trial, that his own testimony in the case had been false, if the witness made such false affidavit, it was perjury.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 61½.]

16. PERJURY ☞37(1)—INDICTMENT—INSTRUCTION.

In a prosecution for an attempt to induce another to commit perjury by filing, in support of motion for new trial, false affidavit falsifying testimony, where the state charged specifically a particular amount of money offered the witness to change his testimony and swear falsely, it was bound by the allegation, and the court improperly instructed that the jury should find defendant guilty if he sought "by any means" to induce the witness to commit perjury.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 134.]

Prendergast, J., dissenting.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

S. E. Shipp was convicted of an attempt to induce another to commit false swearing, and he appeals. Judgment reversed, and cause remanded.

Norton & Brown, of San Antonio, for appellant. W. C. Linden, Dist. Atty., of San Antonio, and E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of an attempt to induce Earl Marshall to commit false swearing. The indictment contains two· counts; the first charges appellant with attempting to induce Earl Marshall to commit false swearing, and the second with attempting to induce him to commit perjury.

Without copying the count submitted by the court to the jury, it substantially alleges that there was a trial in the district court of Bexar county, Tex., between S. P. Cunningham, plaintiff, and the San Antonio & Aransas Pass Railway Company, defendant

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

wherein the plaintiff had sued the defendant, for personal injuries. On the trial of that case Marshall was a witness, and delivered testimony material, and it is so alleged, for the railroad and against Cunningham. This testimony. covers two or more pages of the indictment, but is not here repeated. It is further alleged, after the verdict in favor of the railway company, Cunningham filed a motion for a new trial, and that appellant undertook to induce Marshall to make an affidavit to be used in connection with that motion. It is alleged the case was still pending, and the affidavit was to be used in connection with the motion for new trial. The affidavit sought to be obtained is thus alleged in the indictment:

"I, Earl Marshall, without any solicitation on the part of any one and of my own free will and accord do hereby make this statement: Through prejudice for Mr. John Sehorn for having me subpœnaed. Will Morriss for not trying my case when I thought he should have done so, for Frank McCloskey because he agreed to advance me $50.00 per month and cut me down to $6.00 per week and for Mrs. Cunningham, Sam and Bemiss Cunningham for interfering with Miss Helen Cunningham and myself and preventing us from getting married. For all of the above reasons, I testified falsely against Sam Cunningham in the Forty-Fifth district court when he was suing the San Antonio & Aransas Pass Railway Company for damages for personal injuries to himself and through the solicitation of representatives for the San Antonio & Aransas Pass Railway Company I was induced to testify against Sam Cunningham in his suit for daamaes against the San Antonio & Aransas Pass Railway Company. Whereas in truth and in fact the said S. E. Shipp, at the time that he so solicited and endeavored to persuade and attempted to induce the said Earl Marshall to falsely and corruptly swear as aforesaid, well knew that the said testimony given by the said Earl Marshall upon the former trial of the said case of the said S. P. Cunningham versus the San Antonio and Aransas Pass Railway Company, as hereinbefore set out, was true, and which said statement so attempted by the said S. E. Shipp to be induced to be made by the said Earl Marshall, he, the said S. E. Shipp, then and there well knew to be false, and would, if so made by the said Earl Marshall in the manner and form as aforesaid, be corruptly, deliberately, and willfully false, against the peace and dignity of the state."

The court submitted in his charge only the second count of the indictment, which alleged appellant sought and attempted to induce Earl Marshall to commit perjury in connection with the motion for new trial. The court in his charge begins the charge with this general statement:

"In this case the defendant stands charged by indictment with the offense of attempting to induce one Earl Marshall, to swear falsely, as charged in the second count in the indictment, and to the statement therein contained, said offense alleged to have been committed in the county of Bexar, and state of Texas, on or about the 2d day of February, 1916."

After giving some definitions the court again stated to the jury:

"As heretofore related to you, and as charged in the second count of the indictment herein, for which the defendant is now upon trial, which said offense is defined by statute as follows: 'If any person shall, by any means whatever, cor-

ruptly attempt to induce another to commit the offense of false swearing, he shall be punished by imprisonment,'" etc.

[1] If appellant did, as charged in the second count of the indictment, seek to induce Earl Marshall to file a false affidavit to be attached to the motion for new trial by Cunningham, it was thought to be beneficial to Cunningham in attempting to set aside the verdict of the jury which had been rendered adversely to him, and place him in the attitude of again trying the case, or having the legal right to try the case on his petition for the alleged damages by the railway company to his person. The judge, having selected the count in the indictment, elected for the state the case upon which the jury should pass. This is the settled law in Texas. It amounted to an election by the state.

[2] Having selected the second count, the charge should have submitted the issues under the allegations of that count. This count charged an attempt on the part of appellant to induce Earl Marshall to commit perjury by reason of the false affidavit to be used in connection with the motion for new trial. This count, had it been proved, would not have stated an attempt to induce false swearing, but only an attempt to induce Marshall to commit perjury.

[3] If Marshall had testified as requested by appellant, or had signed the affidavit set out that his former testimony was false, it would have constituted perjury if false. It could not have constituted false swearing. The court submitted only the issue of false swearing. This he could not do under the second count, because false swearing was not therein charged, nor was an attempt therein charged to induce the party to commit false swearing alleged. From no viewpoint of the case could this be false swearing had Marshall, signed the affidavit to be used, and it had been in fact used in connection with the motion for new trial. The court nowhere defines perjury, and did not submit any issue with reference to perjury, but confines his instruction entirely to false swearing.

Under article 304 as found in Mr. Branch's Ann. P. C., at page 469, it is stated that perjury is a false statement, either written or verbal, made under the sanction of an oath, or such affirmation as is by law equivalent to an oath and administered under circumstances in which an oath or affirmation is required by law, or is necessary for the prosecution or defense of any private right, or for the ends of public justice. Article 312 of the same work, provides that false swearing is where any person shall deliberately and willfully, under oath or affirmation, etc., make a false statement by a voluntary declaration or affidavit, which is not required by law or made in the course of a judicial proceeding. These statutes mark the difference between perjury and false swearing as defined by the Legislature. Had Marshall been induced to make the affidavit set out to be attached to

the motion for new trial in the civil suit, it would have been in a judicial proceeding, and it would also be made under such circumstances that it could or would be used in a prosecution or defense of private rights. It was intended to assist Cunningham in obtaining a new trial in the damage suit which he had lost and the railway company had won. The new trial motion had been made by Cunningham to have this judgment set aside and himself awarded a new trial. The case was still pending in court and had not been decided. The finality of the proceeding had not been reached. Had Cunningham obtained a new trial with this affidavit attached, it would have been in a judicial proceeding, and it would have placed him in a different and much better light than he was before a new trial was obtained. This affidavit was intended to be used, or the testimony of Earl Marshall to be, in connection with the motion for new trial, to show that his former testimony was false. The allegation was that Marshall's testimony on the former trial was true, and the affidavit, had it been made, would have been so made for the purpose and with the intent to show his former testimony false and to obtain a new trial. This brought the direct issue as to Marshall's attitude in the trial of the case as to its position had the motion for new trial been obtained. A motion for new trial in a pending litigation is necessarily a part of a judicial proceeding. Therefore had the affidavit been made in connection with the motion for new trial, and had been used in any way in connection with that case, it would have been perjury, and could not be false swearing. An attempt, therefore, to induce Marshall to make that affidavit to be so used would be an attempt to induce him to commit perjury.

[4] The authorities seem to be uniform that where an act is done with the intent to commit a crime, and tending, but failing, to effect its commission, there is an attempt to commit the ultimate crime, which in this connection would be perjury under the indictment. There are a great many authorities which might be cited to support this proposition, but it is deemed hardly necessary. The word "attempt" may be defined as an intent to do a thing, coupled with an act which falls short of the thing intended. The word "attempt" may also be given this definition: It implies an intent formed, and also an endeavor to commit the offense. In other words, an attempt to commit crime is composed of two elements: First, the intent to commit; second, a direct, ineffectual attempt towards its commission. It may be further defined as consisting, perhaps, of three elements; the intent to commit the crime, the performance of some act toward the commission of the crime, and the failure to consummate its commission. It falls short of the thing intended. In Brown v. State, 27 Tex. App. 330, 11 S. W. 412, it is said:

"An attempt is committed only when there is a specific intent to do a particular criminal thing, which intent imparts a special culpability to the act performed toward the doing. It cannot be founded on mere general malevolence. When we say a man attempted to do a thing, we mean that he intended to do specifically it, and proceeded a certain way in the doing."

It is also held in State v. Mitchell, 170 Mo. 633, 71 S. W. 175, 177, 94 Am. St. Rep. 763, that "the only safe rule is that the attempt is complete and punishable when an act is done with intent to commit the crime which is adapted to the perpetration of it, whether the purpose fails by reason of interruption or for other extrinsic cause," etc. We speak here of an attempt in the sense in which these definitions are given, and many of these are found in volume 1, Words and Phrases, under the head of "Attempt."

[5] There would be no question of this proposition had appellant succeeded in inducing Marshall to file the affidavit which he purposed to secure from him had Marshall sworn as desired. The complete act would have been perjury by Marshall because it involved the private rights of the parties litigant, and would have been in a judicial proceeding. It would therefore logically follow, and necessarily so, that under such circumstances the attempt would be to induce Marshall to commit perjury, not false swearing. It could not be held under such circumstances that appellant was trying to suborn Marshall to commit false swearing when the very thing sought to be accomplished was perjury, and the accomplishment of which could only have been perjury. Article 319 of Branch's Annotated Penal Code provides that, if any person shall, by any means whatever, corruptly attempt to induce another to commit the offense of perjury, or false swearing, he shall be punished by imprisonment in the penitentiary. In passing upon this phase of the law we would necessarily have to refer to the constituent elements of the two offenses, perjury and false swearing, in order to ascertain what the purpose of the party was in attempting to induce the perjury or the false swearing. This being true, it is evident that if appellant was guilty of violating this statute, it would be by seeking to induce Marshall to commit perjury. The court does not charge upon perjury, but only upon the question of false swearing. Therefore, the court did not submit the issue set out in the second count, but instructed the jury that under an allegation of an attempt to induce Marshall to commit perjury, they would be justified in convicting of an attempt to induce false swearing. In other words, the indictment charged one offense and the court authorized the jury to convict of another, which was not set out in the count nor included within it. For this reason the judgment must be reversed.

[6] There are a great many exceptions in the record, presented in divers ways. Without going into these matters specifically, it

will be noticed that the testimony delivered by Marshall as set out in the indictment in the trial of the civil case was alleged to be true. The affidavit sought to be signed by Marshall alleged that all of these matters were false, and gave reasons why they were false. The indictment alleged generally all of the delivered testimony was true, and that the affidavit as a whole was false. The pleader having so declared rendered it incumbent that the proof or evidence should correspond. Under this statement the prosecution would be required to prove that all the testimony set out in the indictment was true; not a portion of it, but in its entirety.

[7] Having alleged the general false statement in solido, the court was required also to charge that in order to convict from this standpoint, the entire affidavit would have to be shown false. The indictment did not allege in different averments that this or that part of the false affidavit was false, but alleged it generally in its entirety. It, therefore, became incumbent upon the state to so prove, and the court should have instructed the jury that, before they could convict, the entire testimony ,was true, and the entire affidavit was false. This was not done, and exception was reserved.

There are several exceptions to the charge, some of which are well taken. Among others, exception was reserved to the charge of the court with reference to accomplice testimony, and special instructions requested to cover the deficiency. These were refused. They should have been given.

[8] The jury should also have been instructed that the falsity must be proved by two credible witnesses, or one credible witness, supported by the necessary statutory corroboration.

It is also insisted that some witnesses who seemed to have figured largely in connection with Marshall and schemed to induce him to make the false affidavit ,were accomplices, or at least the question should have been submitted to the jury for their determination. We are of opinion that their connection is such that the rule laid down in Dever v. State, 37 Tex. Cr. R. 396, 30 S. W. 1071, was applicable. It is unnecessary to go into the statement about this matter, but if upon another trial the testimony should develop as in this case with reference to this matter, we think it should be left to the determination of the jury by an appropriate instruction.

[9] There are quite a lot of other bills of exception with reference to the rejection and admission of testimony. Without going into a detailed statement of these matters, if there should be another trial, we say, in a general way, that any testimony offered by the defendant to meet that introduced by the state, which combated or explained favorably to the defendant that introduced by the state, should be admitted. It is not the purpose here to go into a detailed review of that question. A general rule may be stated that, wherever one party introduces a fact which is thought to be beneficial, or whether beneficial or not, is introduced, the opposite party has the right to meet it in any legitimate available way by testimony. Either side always has the right to meet or explain any fact introduced against him. This is a fundamental rule.

[10] There are quite a number of questions arising on the record which, if treated at length, would require a very lengthy opinion. It is thought these matters can be disposed of by writing in a general way. The indictment avers the truth of Marshall's testimony and its materiality as delivered in the civil case. This was one of the leading issues alleged, and is a basis for the allegation of the false affidavit. The state's theory was and is that Marshall's evidence in the civil case was true, and appellant was seeking to induce him to swear that it was false, and this affidavit was to be used in the motion for new trial. If his evidence ,was false, the state would necessarily fail to prove its case, because its truth had been alleged in the indictment. In this connection the state introduced only that part of Marshall's testimony delivered in the civil case which is stated in the indictment. Upon the introduction of this portion of Marshall's testimony, the district attorney announced to the court that the state would go no farther into Marshall's testimony, and would not use other portions of it. As a part of defendant's case he offered much of Marshall's evidence, especially that elicited on his cross-examination in the civil case. This was done to weaken, if not to impeach, the testimony of Marshall as set out in the indictment. The state introduced other evidence which was sought to be attacked by defendant on cross-examination of Marshall and other witnesses and more fully developing the matters so elicited by the state. This was all ruled out by the court, and exceptions were properly reserved. The state was called upon to prove its case to the exclusion of the reasonable doubt of guilt and overcome the presumption of innocence. The alleged truth of Marshall's testimony in the civil case necessarily had to be shown, because it was averred in the indictment. Appellant ,was not called upon to show its falsity, and was not required to introduce any evidence until the state had at least made against him a prima faice case. Appellant, therefore, had the legal right to disprove any fact relied on by the state, and to show the falsity of any and all of such evidence. The court was in error, therefore, in refusing to permit such portions of Marshall's testimony in the civil case which was sought by the defendant, and which tended to impair, weaken, or impeach that set out in the indictment.

[11] Again, having alleged the falsity of the affidavit, it was necessary to so prove.

The defendant would have the right to show its truthfulness either by direct or circumstantial evidence, and would also have the right to show the falsity of the testimony delivered on the trial in the civil case relied upon by the state by direct or positive evidence, or by circumstantial evidence, and as well by impeaching the truthfulness of the state's witness, or resort to evidence known to legal rules applicable to such cases. Inasmuch as in this character. of case the state was required to prove its case by two credible witnesses, or one such witness with strong corroborating facts and circumstances, any attack which showed, or tended to show, that the witness or witnesses were not credible became of first importance, and necessarily introducible. This would apply not only to the witnesses who testified for the state, but defendant would be justified in resorting to any legitimate attack on the corroborating circumstances relied on by the state. Illustrative: Marshall's character for truth was seriously attacked by defendant, and this was not undertaken to be controverted by the state. It was shown he had been and was rather given to familiarity with doubtful transactions in railroad damage suits, either for himself or others, or for the railroad. His acts and conversations and performances in these respects got into the case and became a part of it. The defendant sought to pursue these matters as shown by various bills of exception, but was prohibited from showing much of it. Among other things, he swore that he was practically compelled and forced to make certain affidavits which were before the jury. These were used by the defendant to attack his credibility and his testimony with reference to these matters, and were damaging to his standing as a witness. He testified, further, that he informed the district attorney and gave him the details of these transactions, and stated some indicating that he acquainted the district attorney fully with the enviroments and surroundings of the reasons and impelling forces that required him to sign the affidavits. Those affidavits were contradictory of his main testimony for the state. The district attorney testified, in a general way, that the witness had said something about it, and when he was sought to be used by the defendant to show that the details of these matters were not given him as testified by Marshall, objection was sustained. If permitted, the district attorney would have contradicted Marshall upon these matters. This we think was important. Marshall was seeking to impress the jury with the fact that, as soon as he made the last affidavit, he informed the district attorney of these matters and the environments and surroundings. The district attorney would have testified, had be been permitted, or so stated the bill, that Marshall gave him no such information.

We are stating these matters generally and not in detail, nor repeating the language. All this, of course, was introduced for the purpose of attacking Marshall, his veracity, credibility, and truthfulness. The importance of this will be noted from the fact that the statute requires the state to prove its case by two credible witnesses, or one credible witness, with the necessary statutory corroboration. The credibility of Marshall, as well as the corroborating circumstances to sustain him, were of great importance to the state, and necessary to make out such case, as it might ask the jury for a verdict. Again, the falsity of the affidavit set out in the indictment must also be shown by the same weight and quantum of proof, because it was perhaps the most important question in the case. Marshall was a, if not the, central figure of the trial. The state was compelled to present him as truthful and credible, in order to prove the truthfulness of his testimony delivered in the civil case, as well as the falsity of the affidavit averred to be false, in which it was sought to induce him to change his former testimony. The false affidavit, as well as the alleged truthful testimony above mentioned, centered in the witness Marshall. He was the party who was sought to be suborned or induced to make the false affidavit. By reading his testimony it will be discovered that on the trial he testified substantially that every reason set out in the false affidavit, and given by him for making it, is true in regard to Mr. John Sehorn, Will Morriss, and Frank McCloskey, but so far as we recall the record he failed to testify anything in regard to Mrs. Cunningham, Sam and Bemiss Cunningham, and their stated interference with a prospective marriage between himself and Miss Helen Cunningham. On that matter the record seems to be silent; at least, the writer of this opinion does not recall any testimony from him in this respect. If he testified to the fact that he told the truth in the civil case, it is more from inference than direct or positive statement, and therefore the affidavit seems, as far as the evidence goes and as introduced to sustain it, true, and as to the other matters mentioned there was a want of evidence. It will be noticed in the indictment there is no allegation that any particular part of the testimony in the civil case was true. The indictment confines itself to the general statement that all of the testimony set out was true, and the allegation in regard to the false affidavit is as general. It selects no part or parcel of his testimony except as set out in the indictment as being true. If the affidavit is sufficient to show any attempt to induce appellant to change his testimony as given on the former trial, it is not mentioned, nor is there any innuendo averment specifying which part of it Marshall was to swear was false, otherwise than the general statement covering two or three pages in the indictment. If this is to be taken as the criterion of the case on this

trial, then it would be incumbent upon the state to prove all the testimony set out to be true as stated, and it would also devolve upon the state to show everything in the false affidavit to be false. The witness Marshall himself testifies on this trial, as is stated in the affidavit, that he had ill feeling towards Messrs. Sehorn, Morriss, and McCloskey as the affidavit alleges. His testimony makes that part of the false affidavit true, if he was swearing the truth, and there seems to be nothing to contradict him in regard to that matter. Nor do we find any evidence in this record, especially by Marshall, that he had been induced to give the testimony in the civil suit at the instigation or solicitation of the representatives of the railway company. There should have been sufficient proof in reference to this matter as it was set up in the affidavit. That seems to be one of the issues about which there was no testimony.

So the case stands practically on Marshall's testimony as to what he swore on the trial as to whether it was true or false. He was not corroborated, if so very slightly, but was attacked, and it seems successfully, as to his truthfulness and veracity in a general way, and he is not corroborated by other testimony that the facts that he stated in the civil case are true. He places most of the matters in his testimony in the civil case in the presence of other people, mainly the relatives of the Cunninghams, but these were not introduced.

We have treated these matters in a general way, illustrating by what has been said that many of these bills of exception are of the same character and nature, and were reserved largely to the court's failure to permit the defendant to contradict or impeach, or elicit facts which would contradict the evidence put in by the state, and this was of a material character. So that upon another trial the court will understand that wherever a fact has been introduced or circumstances permitted to go to the jury which were beneficial, or thought to be beneficial, to the state, the defendant would have the right, by any legitimate rules of evidence, to attack such showing for the state, or attack its force, or show its falsity. It is unnecessary, we think, to discuss all of these bills of exception.

The first count of the indictment has not been discussed because it passed out of the case by the selection by the judge of the second count, which is an election for the state, and the judge submits only the second count for the consideration of the jury. The failure to submit the first count eliminates it from the case, and it is therefore in no way mentioned or discussed.

The judgment is reversed, and the cause remanded.

PRENDERGAST, J., dissents.

MORROW, J. (concurring). This prosecution is by indictment for an attempt at subornation of false swearing, and an attempt at subornation of perjury. It is based on article 319, P. C., and contains two counts. The allegations in each count are identical, except that in the first count the following allegation is made: "But which said oath was not then and there required by law, nor made in the course of a judicial proceeding," and in the second count, instead of the words last above quoted, the indictment contains the following: "And was intended to be used during the course of such judicial proceeding in said district court of Bexar county."

The count charging an attempt at subornation of perjury was not submitted to the jury. A conviction was had upon the count charging an attempt at subornation of false swearing. The court confused the two counts; that is, in the first paragraph of the charge he used the following language:

"In this case the defendant stands charged by indictment with the offense of attempting to induce one Earl Marshall to swear falsely, as charged in the second count in the indictment."

And further says:

"As heretofore related to you, and as charged in the second count of the indictment herein, for which the defendant is now upon trial, which said offense is defined as follows."

In defining the offense submitted to the jury, and in submitting to them the facts under which a conviction could be had, he defined the offense of subornation of false swearing, describing it as contained in the second count of the indictment, though as a matter of fact it was contained in the first count of the indictment: the second count relating to the offense of subornation of perjury.

The substantial allegations upon which a conviction was sought was appellant's attempt to induce Earl Marshall to make an affidavit in writing as follows:

"For all of the above reasons I testified falsely against Sam Cunningham in the Forty-Fifth district court when he was suing the San Antonio & Aransas Pass Railway Company for damages for personal injuries to himself and through the solicitation of representatives for the San Antonio & Aransas Pass Railway Company I was induced to testify against Sam Cunningham in his suit for damages against the San Antonio & Aransas Pass Railway Company"

—and that the said Marshall gave certain testimony on the trial mentioned, which testimony was set out in the indictment and which the indictment alleged was true. Earl Marshall was used as a witness for the state, and testified, in substance, that his testimony set out in the indictment given at the trial was true. He also testified that the appellant and his half-brother, Harville, agreed to pay him $250 to make, sign, and swear to the affidavit set out in the indictment, and that they exhibited the money; that he did not sign the affidavit or swear to it; that it was not true. Appellant testified that, entertaining the belief that Marshall had perjured himself in the Cunningham Case, he was willing to give him $200 to sign the affidavit acknowledging that he had perjured himself

in the Cunningham Case, appellant claiming, however, that he did not undertake to have Marshall make a false affidavit.

Exceptions were reserved to the court's charge because it failed to tell the jury that the appellant could not be convicted upon the testimony of an accomplice unless it was corroborated, and also submitted several special charges seeking to supply the omission in the court's charge. There were other witnesses who the testimony showed were engaged in an effort to trap the appellant into committing the offense, or to catch him in the act if he did do so. Appellant insists that the testimony of these witnesses was subject to the legal qualification applying to accomplice testimony, and also insists that Marshall's testimony required a charge on that subject. Appellant's fifth special charge contained the proposition that a conviction could not be had upon the uncorroborated testimony of an accomplice, and undertook to have the question as to whether there was accomplice testimony determined by the jury, and special charge No. 8 was to the same effect in substance.

The writer does not believe that the indictment was bad, nor that the mistake of the trial judge in designating the numbers of the counts was calculated to confuse the jury to the extent that it would require a reversal of the case. The error should have been corrected in response to the appellant's objection to the charge calling attention to the mistake. It does appear, however, from the standpoint of appellant, and from his testimony, that at least the witness Marshall was in the attitude of an accomplice, and that the question as to whether he was an accomplice or not should have been submitted to the jury under appropriate instructions, with the information that a conviction could not be had upon his testimony alone, without corroboration such as was required by law on accomplice testimony; and, in the judgment of the writer, neither special charge No. 5 nor No. 8 would have accomplished this purpose. Article 801, C. C. P., gave the appellant the right to such a charge if the facts were such as to show that Marshall was an accomplice, or was such as to raise the issue as to whether he was an accomplice or not. He gave very damaging testimony against the appellant. Appellant was charged with attempting to induce him to make a false affidavit. Marshall's testimony would go to show that the appellant did make the attempt with knowledge of the fact that the affidavit he was trying to procure was false, and that appellant agreed to pay him for making it. Appellant's testimony was to the effect that Marshall agreed to make the affidavit in consideration of some money. The testimony shows that the affidavit was written, and that the money was on hand in possession of appellant, and exhibited to Marshall; that Marshall was

in the act of signing it when the officers appeared and made the arrest. If the affidavit was false and had been made by Marshall by appellant's solicitation and inducement, or under his influence, there would have been a crime committed in which both appellant and Marshall would have been actors. This prosecution is for an attempt to commit a crime in which it was contemplated that they should both be actors, and in the proceedings developed by the evidence there was testimony that they both were actors. An accomplice as used in article 801, C. C. P., as stated in the notes under that article, includes principals and accessories, and persons who are particeps criminis. It means a person who, either as principal, accomplice, or accessory, is connected with the crime by unlawful act of omission on his part, transpiring either before, at the time of, or after the commission of the offense. Under this proposition a great number of decisions of this court are cited. In the judgment of the writer Marshall was an accomplice under his own testimony under the authority of the opinion by Presiding Judge Hurt in the case of Dever v. State, 37 Tex. Cr. R. 396, 30 S. W. 1071.

On the trial of the case of Cunningham v. Railway, the witness Marshall testified on direct examination, and was also cross-examined. In the indictment his testimony given on direct examination only is set out. Appellant on the trial of this case insisted upon introducing in evidence Marshall's cross-examination given in the civil case. This was excluded on objection by the state, and in the opinion of the writer should, on another trial, be admitted in evidence. The burden assumed by the state in the indictment was to prove that Marshall's testimony on the trial of the case against the railroad was true. If this burden was discharged by proof that the part of his testimony so set out in the indictment was true, the defendant was entitled to have the jury hear all the testimony Marshall gave upon that trial.

The indictment charged that the inducement offered by appellant to Earl Marshall to make the false affidavit was the payment of $250 in money. The court in submitting the case to the jury in his main charge failed to refer to this allegation, but used the following language with reference to the inducement:

"Now, if you believe from the evidence beyond a reasonable doubt that the defendant S. E. Shipp did, in the county and state aforesaid, on or about the time alleged in the indictment, by any means whatever, corruptly attempt to induce the said Earl Marshall to commit the offense of false swearing."

This was error, and was called to the attention of the court in appellant's exceptions to his charge. The appellant requested a special charge, however, which correctly stated the inducement alleged in the indictment, and this special charge was given. On another trial the error pointed out should be avoided.

Without concurring in all that is said in the opinion by the Presiding Judge reversing this cause, being of the opinion that there was prejudicial error in refusing to charge on accomplice testimony, the writer concurs in the reversal of the case.

### On Motion for Rehearing.

DAVIDSON, P. J. The state contends that the writer erred in the original opinion in holding that if the offense had been consummated it would have been perjury and not false swearing. Several reasons are assigned in the state's motion for rehearing, in substance, as follows: There is no evidence sufficient to show that the affidavit, "if same had been actually procured, was intended to be attached to the motion for new trial," the only evidence bearing on this subject being the testimony of Marshall, to the effect that at the first suggestion of his making such an affidavit a statement was made, either by Shipp or Harwell, that he was the only man who could procure for Cunningham a new trial of the cause which had been decided adversely to him in the Forty-Fifth judicial district court of Bexar county, and said testimony did not include the statement that this affidavit, if procured, would have been attached to the motion for new trial; and for the further reason that it not being expressly shown that said affidavit, if procured, was intended for use upon the motion for new trial. The writer has reviewed this case in the light of the state contention, and cannot agree with it. The second count of the indictment alone was submitted, which undertook to charge an attempt on the part of appellant to suborn Marshall to file a false affidavit in connection with the motion for a new trial in the damage suit between Cunningham and the railway company in the Forty-Fifth judicial district court of Bexar county. That there may be no question about this matter, a reference to the indictment shows that after setting out the testimony of Marshall delivered in the damage suit between Cunningham and the railway, and the allegation of its truthfulness, the following quotation is made from the second count:

"And that thereafter on, to wit, the 2d day of February, A. D. 1916, while a motion for new trial in behalf of said plaintiff, S. P. Cunningham, was pending in said district court of Bexar county, Forty-Fifth judicial district of Texas, and in the county of Bexar and state of Texas, S. E. Shipp did unlawfully, wickedly, designedly and corruptly solicit, instigate and endeavor to persuade and attempt to induce the said witness, Earl Marshall, by then and there corruptly offering to give to him, the said Earl Marshall, $250 in money, to make, and if he would voluntarily make under the sanction of an oath duly administered to him by a person and officer having authority to administer the same, his declaration and affidavit to a certain false statement in writing, the purpose of which said false statement was that it be used before the said district court of Bexar county, Forty-Fifth judicial district of Texas, in con-

nection with a certain motion for a new trial filed by said plaintiff, S. P. Cunningham, in the said cause No. B–4465, S. P. Cunningham versus San Antonio & Aransas Pass Railway Company, and which said false statement was by the said S. E. Shipp intended to be made, and intended to be secured from the said witness, Earl Marshall, during the pendency of the said civil proceeding of S. W. Cunningham versus the San Antonio & Aransas Pass Railway Company, and was intended to be used during the course of such judicial proceeding in said district court of Bexar county, Forty-Fifth judicial district of Texas, and said false declaration and statement was as follows, to wit."

Then follows the proposed affidavit set out in hæc verba.

[12, 13] The first count undertook to charge that an attempt was made to suborn Marshall to commit false swearing. As it was not submitted by the court, it will not be considered or discussed. Had the affidavit been obtained and filed with the motion for new trial as set out in the indictment to be used in said trial on the motion for a new trial in the pending case, there could be no question that it would be in a judicial proceeding, and this indictment charges it was intended to be obtained to be used in connection with that pending motion for a new trial. If that affidavit had been filed in connection with the motion for new trial, it would have been filed in the pending civil proceeding in the district court. That question is not debatable. Whether it would have been used as evidence or not is not necessary to discuss. It was intended to assist in obtaining a new trial for Cunningham. If it was obtained in connection with and to be used in the motion for a new trial and had been filed, it would have been in a judicial proceeding. This is charged in the indictment. It could have been used as evidence had it been filed, for our statute expressly provides that the court may hear evidence on motion for new trial, either by affidavit or otherwise. If that affidavit had been filed, it was a direct contradiction of Earl Marshall's testimony delivered in the civil case, set out as being true in the indictment. The statute with reference to perjury not only provides that such instrument shall constitute the basis of perjury, but the statute with reference to false swearing expressly provides it shall not be false swearing. It will be noticed that the motion filed by the state, among other things says it is not alleged that the affidavit was to be attached to the motion for new trial.

[14] The fact that a paper filed in a judicial proceeding is or is not attached to a certain other document does not affect the question of perjury. It is the falsity of the paper that is to be used that is the criterion, and the mere fact that it is or is not attached to some other paper in the case does not affect the falsity of the document. The indictment does allege it was intended to be used in connection with obtaining the motion for new trial, and the writer regards

the contention of the state that it was not expressly alleged that it was to be attached to the motion as a play upon words, and it is unnecessary to discuss it. The writer is the more firmly convinced, after a review of the matter, that the second count undertakes to charge only an attempt to procure subornation of perjury. The first count did not. It only charged an attempt to suborn the witness to commit false swearing.

Another clause of the motion for rehearing uses the following language:

"The court in said opinion errs in holding that the clerical error of the trial court, after defining and submitting all definitions, only submits subornation of false swearing; in fact, changed the submission of the case by inadvertently, through clerical error, referring to the wrong count in the indictment."

The writer cannot agree with this statement, and will use the language of the court below in submitting the case to the jury to show the state's motion is in error. The beginning of the charge is in the following language:

"In this case the defendant stands charged by indictment with the offense of attempting to induce one Earl Marshall to swear falsely, as charged in the second count in the indictment, and to the statement therein contained, said offense alleged to have been committed in the county of Bexar," etc.

In another portion of the charge, after giving the definition, this language is found:

"As heretofore related to you, and as charged in the second count of the indictment herein, for which the defendant is now upon trial which said offense is defined by statute as follows," etc.

Again, in submitting the case to the jury, the court says:

"Now, if you believe that the defendant, S. E. Shipp, was present at the time it is alleged in the indictment that an attempt was corruptly made to induce the said Earl Marshall to make a false affidavit, and if you believe from the evidence beyond a reasonable doubt that defendant. S. E. Shipp, did not aid or encourage * * * to commit the offense alleged in the second count of the indictment, or if you have a reasonable doubt about this, then you will find the defendant, S. E. Shipp, not guilty."

The court's charge was given appellant's counsel as required by the statute before it was read to the jury, to which counsel noted exceptions. The second ground of objection to the charge is in the following language:

· "Because the court submitted to the jury *alone* *the second count* of the indictment, and does not define, or attempt to define, what constitutes in law attempted subornation of perjury."

Third:

"Because the court, after telling the jury that the case is submitted to them upon the *second* count in the indictment alone, proceeds to define the offense with which the defendant is charged, and tells the jury that the offense charged is attempted subornation of false swearing."

Again, he excepted to that portion of the charge given by the court already mentioned above in the following language:

" * * * And because the *second count in the indictment attempts to charge attempted subor-*

nation of perjury, and not attempted subornation of false swearing, and is upon the weight of the evidence."

The tenth ground of exception is:

"Because the court in the charge attempts to define false swearing and subornation of false swearing when the defendant was not indicted for said offenses, and same were not issues in the case, and the court should not have charged on false swearing and subornation of false swearing."

The twelfth ground is:

"Because the court in his charge to the jury all through the charge and in a number of places in the charge refers the jury to *the second count in the indictment and tells the jury that they will consider the second count alone, and the second count of the indictment charges attempted subornation of perjury*, and does not charge the defendant with attempted subornation of false swearing, and then, having told the jury that they are to try the defendant *upon the second count*, the court proceeds to charge the jury upon the first count," etc.

These exceptions to the charge are only quoted in response to the statement in the state's motion for rehearing that the court, through "inadvertence," submitted the second count. The writer is of opinion it was not inadvertence. There were too many exceptions and repetitions by the court to undertake to say it was through inadvertence. I do not understand from all these matters directly called to the court's attention how he inadvertently overlooked all of those things. The exceptions to the charge were pointed and specific. The writer would not suppose for a moment that the court intended to do the wrong thing through inadvertence or any other way. He indulges the statement that the court believed he was right in what he was doing, and that after his attention was called to it, he still adhered to his belief that he was correct in submitting the second count of the indictment. It is mistakes and inadvertence committed in the trial of cases that bring about reversals. The writer does not believe the trial judge would deliberately submit the law of the case wrong, and he indulges here no such presumption. The matter was too pertinent and too often called to his attention to cause it to be charged as being inadvertence. But the other proposition is the correct one, that he did submit the second count, and that he did it deliberately under the full belief on his part that he was right about the matter. The theory of the state, as I understood on the first submission of the case, was that the second count did not charge an attempt to induce the witness to commit perjury, but false swearing, and that the second count so charged. It is a well-settled proposition of law, and does not require a citation of authorities at this late date, that the selection of a count in the indictment by the court in its submission of the charge to the jury, confining the law as he applies it to the case in the selection of this count, is binding upon the state, and is an election where there are two or more counts. This matter under-

went investigation in Parks v. State, 29 Tex. App. 597, 16 S. W. 532. If there is a contrary decision in Texas, it has escaped the attention of the writer.

[15] The original opinion is said to be erroneous, in that this court reversed the judgment because the court below did not charge the law applicable to accomplice testimony. This case did call for a charge on the law of accomplices. See Davis v. State, 70 Tex. Cr. R. 524, 158 S. W. 288; Smalley v. State, 59 Tex. Cr. R. 95, 127 S. W. 225; Branch's Ann. Statutes, p. 421, and cases cited in section 766. The Davis Case overrules the O'Brien Case in 6 Tex. App. 665. Whether the two cases are in conflict is not necessary here to discuss. While the indictment charges an attempt to suborn a witness to commit perjury, yet that proposition is based entirely and exclusively upon the idea that appellant proposed to bribe Earl Marshall to make an affidavit to assist Cunningham in the civil case to obtain a new trial. That is the state's theory of the case. If that is true that would be an attempt to bribe a witness to swear falsely as the state contends, but had he so sworn it would be perjury. If Marshall accepted it, or agreed to accept it, he would be criminally corrupt. If as contended by appellant, Marshall made the proposition to him to give him so much money to make the affidavit, and that he (Marshall) would then leave the country. Appellant's testimony conveys the idea that Marshall sent for appellant and his brother-in-law, Harwell, and made them the offer to accept the money to leave the country. Quoting from appellant's testimony, after narrating the fact that at the request of Marshall he and Harwell went to Marshall, and after reaching the point designated he says:

"Nevertheless he stood there and talked a little bit, and Harwell asked Marshall what was the nature of this thing, or what he wanted, something to that effect, and Marshall said: 'I am going to make a statement to Harwell; do you want to be present and witness it?'—or something of that sort; and I replied, 'I don't understand it.' Marshall said: 'Come inside and I will tell you; come right into this inner room here.' And I went into the inner room with Marshall and Harwell, and Marshall said: 'Now I want to get out of this country, I want to go back to the old country, and I want to make a good clean truthful statement to your brother or to you;' and I said to him: 'All right; what is the nature of the thing going to be?' And he says: 'Well, I haven't got time to explain it all to you now;' and I said, 'Well have you got anything to do or anything, there is no use fooling around about it, let's go ahead and let me know what you have got.' We stayed there and talked awhile, and during the conversation he told me that he wanted to go back to the old country, and said he was not in shape to get back to the old country, and I said, 'You are going to make a good clean truthful statement, are you?' and he said, 'Yes,' and I said, 'Well, I will tell you Marshall, what would it take to get you back to the old country?' He said he didn't know what it would take. * * * I positively didn't request or ask Marshall to make a false statement. I was not trying or undertaking to get a false statement from Marshall. He wanted to make a statement, and I understood he was going to make a truthful statement."

This testimony shows the matter was not arranged at this conversation and meeting, and that they made another meeting at a different point in the city at the instance of Marshall on the following day. They met, and the matter was discussed, and the parties were arrested. Whether appellant was innocent in the transaction or not, the issue was raised as to whether Marshall made the proposition, or they made the proposition with reference to inducing him to make the affidavit. If Marshall went into the matter willingly and agreed to accept the money, it would show that from his viewpoint he was to make a false affidavit in order to obtain for Cunningham a new trial, and at the instigation of Harwell and appellant. If appellant's side is true, Marshall made the offer to them, and, debating it, these conversations occurred. Although the indictment charged an attempt to obtain a false affidavit to be used on the motion for new trial, yet it was an offer to bribe Marshall, who had been a witness in the original trial, now to commit perjury by making an affidavit showing that all of his former testimony was false. This matter was pretty fully discussed in the Davis Case, supra, by Judge Harper. It is unnecessary here to discuss the question involved had Marshall been innocent in the transaction and had not agreed to accept the offer. His theory of it was that he was trying to entrap Harwell and appellant. That is the state's theory, but that is not the defendant's side of the case, and although Marshall may have said that he was trying to entrap them, there must have been some reason why he wanted to entrap them. He had testified he said truthfully on the other trial, and these parties seemed to have no particular interest in this case, and Shipp swears positively he did not have. The conclusion might be deduced that Marshall was a man who could be easily approached and induced to commit perjury if sufficient money was put up, but that did not show the innocence of Marshall.

Another proposition involved here which the writer does not purpose further to discuss than to make a mere allusion. The motion for rehearing contends that the court was wrong in holding that the state would be required to prove the truthfulness of Marshall's evidence as alleged in the indictment, and was also in error in holding that it was not necessary to prove that the entire affidavit was false. These matters were alleged in solido, and, the state having seen proper to so allege, it became incumbent upon the prosecution to so prove. Enough was said, we think, with reference to this matter in the original opinion.

[16] One other question will be noticed. The indictment alleged specifically a particular amount of money offered the witness

Marshall to change his testimony and swear falsely. The court did not confine the charge to this allegation, but instructed the jury, if they should believe that appellant "by any means" sought to induce Marshall to commit perjury, he would be guilty. That is not the law. Having elected to charge specifically the attempted means to induce the false affidavit, the state would be bound by such allegation. The court could not submit the theory of conviction on any other consideration.

Believing the original opinion to be correct, the motion for rehearing by the state is overruled.

PRENDERGAST, J., dissents.